MILLS et al. v. MILLS, (RIDER, Intervener.)

(Circuit Court, D. Oregon. September 8, 1893.)

No. 1,910.

1. EXECUTORS AND ADMINISTRATORS—PURCHASE OF ESTATE BY ADMINISTRATOR
—RATIFICATION OF HEIR.
The consent of the heir and sole devisee of an estate that the administrator should purchase the property, and the acceptance and retention by the heir of a promissory note made by the administrator in payment of the purchase price, is a complete authorization and ratification of the transaction, the validity of which cannot be questioned, where neither the purchase price was inadequate, nor the sale procured by unfair means.

2. DEED—DELIVERY—PRESUMPTION.
The possession of a duly-executed deed by the grantee, and the finding among the papers of the deceased grantor of a promissory note made by the grantee for the purchase price, together with an unexecuted mortgage to the grantor for the purchase price, create a presumption that the deed was duly delivered to the grantee; and the words, "Don't record your deed till you see me. I will bring up the mortgage with me,"—in a letter from the grantor to the grantee, contain an implied admission that the grantee had a right to record the deed.

3. EQUITY—MORTGAGE FOR PURCHASE PRICE.
In such case equity will direct the execution of a mortgage by the grantee to secure the note given for the purchase price.

In Equity. Bill by Ceceil J. Mills and Warrena Mills, by her next friend, against Fred H. Mills, for a reconveyance of realty and for an accounting. William M. Rider, as administrator of the estates of Warren H. Mills and Warren F. Mills, intervenes. Decree for complainants.

Frank V. Drake and Reddy, Campbell & Metson, for complainants and intervener.

N. B. Knight and C. A. Dolph, for defendant.

GILBERT, Circuit Judge. The complainants brought suit against the defendant, alleging that on January 22, 1890, Warren H. Mills died in San Francisco, Cal., leaving all his property, by will, to his only son and heir, Warren F. Mills; that a portion of said estate consisted in an undivided one-half interest in certain personal property and lands situated in Klamath county, Or.; that, with the consent of said Warren F. Mills, the defendant was upon the 21st day of July, 1890, appointed administrator of the said property in Oregon by the county court of Klamath county, and upon August 12th, following, filed his inventory and appraisement of said property; that on the 17th day of November, 1890, the said Warren F. Mills died, leaving surviving him the said Ceceil J. Mills, his widow, and Warrena Mills, an infant, his only child, and devising and bequeathing to his said widow all of his estate; that the defendant took possession of said property in Oregon as such administrator, but that he is wrongfully dealing with the same as his own, and claims to own all of said personal property, and has appropriated the rents and profits of said real

estate to his own use, and has suffered waste of the said estate; that he has wrongfully disposed of portions of said personal property, and appropriated the proceeds thereof to his own use; that in July, 1890, the said Warren F. Mills, by deeds, partitioned said lands with the owner of the other moiety, and thereafter, in September, 1890, the said Warren F. entered into negotiations with the defendant concerning the sale and conveyance to defendant of a one-fourth interest in said lands so set apart to the Mills estate; that defendant executed a promissory note to said Warren F. for $8,000, payable five years from date, for the purchase price of said interest, and that said Warren F. and wife executed a deed therefor, and placed the same in the hands of defendant, but said deed was not to be considered delivered until the defendant should execute a mortgage on said interest to secure payment of said note; that said negotiations were never completed, and said mortgage was never executed, and the defendant wrongfully placed his deed on record, and wrongfully claims title thereunder. The prayer of the bill is that the defendant be decreed to hold said title to said interest in the lands in trust for complainants, and that he make conveyance thereof to the complainants; that he account for and pay over all profits derived by him from the use of the real estate of said estate; and that he account for all personal property of said estate.

The defendant's answer alleges that the one-half interest in the personal property did not belong to the estate of Warren H., but was the property of Warren F., by gift from his father, and that Warren F., having procured the other half interest from his father's former partner, sold the whole thereof to defendant in July, 1890, for a consideration of $3,800. The answer denies that the conveyance of the one-fourth interest in the lands was not completed before the death of Warren F., and denies that the defendant agreed to execute a mortgage therefor, and alleges that the defendant paid Warren F., on account of the purchase of the land, $2,000 in cash, and, on account of the lease transferred to him, $800, and the remainder was paid by notes. Some amendments were made to the bill, and supplemental averments were filed, showing that the defendant was upon July 6, 1892, removed from office as administrator; and W. M. Rider, who succeeded him as administrator of the estate of Warren H. Mills, and became also the administrator of the estate of Warren F., intervened, in his official capacity, on behalf of both estates.

The evidence in this case shows that Warren F. Mills and the defendant were cousins, and the relations existing between them were of an unusually confidential and friendly character. Warren F. was possessed of a considerable estate, while the defendant was poor. They had been students of the law together at Michigan University. When the death of Warren H. occurred, the defendant, at the request of Warren F., came to Oregon to look after the estate in Klamath county. He was appointed administrator on the 21st day of July, 1890. At about that date, Warren F.

also came to Oregon, and negotiations were begun between him and the defendant, looking towards a sale to the latter of all the personal property together with an interest in the land. Warren F. had by this time purchased from J. B. Rider the other one-half interest in the personal property. The negotiations were under consideration some two months. In the latter part of September, 1890, Warren F. went from Linkville to San Francisco, and did not return to Oregon. His death occurred on November 17, 1890. There is some discrepancy in the parol testimony as to the condition of the negotiations regarding the sale of the personal property and the land at the time of the death of Warren F. It is undisputed that he had executed a bill of sale of all of the personalty, and that he and his wife had made a deed of a one-fourth interest in the land, and had placed the same in the defendant's possession. Two promissory notes from the defendant were found among the effects of Warren F. in San Francisco,—one for $3,850, and one for $8,000; also, an unexecuted mortgage drawn to secure the $8,000 note; also, an option to purchase said one-fourth interest in said lands from the defendant in case the same should be offered for sale by him; also, an indenture of lease executed by said Warren F. and the defendant, leasing to the defendant for five years the three-fourths interest in said lands belonging to said Warren F. The defendant had in his possession, and produced in evidence, the bill of sale, duly executed; the deed to the one-fourth interest in the lands; a lease signed by Warren F. and himself, by which the other three-fourths interest in said lands is leased to defendant for a term of five years; an assignment of the unexpired term of a previous lease upon the property of Warren H., made by Warren H. and J. B. Rider to one McCollum.

It is the contention of the complainants that the negotiations were not completed at the time of the death of Warren H.; that the deed referred to was placed in the hands of the defendant for a special purpose only, and was not delivered; and that the defendant procured possession of the other papers wrongfully, after the death of Warren F. A large amount of testimony is presented upon this issue. I am inclined to the belief that the contention of the complainants is not supported by the evidence. It is not disputed that all the papers in question, except the mortgage, were duly executed by the parties before Warren F. left Oregon. The fact that the papers were found in the possession of the parties. in the manner above indicated, creates a strong presumption that all the terms of the transaction were agreed upon, and that all the papers so signed were delivered. The parol testimony is not sufficient to overcome this presumption. A letter which was written by Warren F. to the defendant on the 27th day of October, 1890, affords some light upon the situation. He wrote, (concerning the lease:)

"Are you discouraged? Do you want to give it up? If so, let me know by telegraph at once, for I have a man who wants the place, if he can have it

right off. I want to stick to my bargain with you, but I also want you to stick by yours with me. * * * Don't record your deed until you see me. I will bring up the mortgage when I come."

It is claimed by the complainants that the expression, "Don't record your deed until you see me," is corroborative of their contention that the deed had not been delivered to the defendant. To my mind, it is evidence to the contrary. The words so written contain an implied admission on the part of Warren F. that the defendant had the right to place his deed on record, and that there was a possibility of his doing so, unless requested to withhold the same. When Warren F. left Oregon, it is evident that the mortgage had not been prepared. There was probably an understanding that the deed and mortgage were to go upon the record simultaneously.

The deed from Warren F. and wife to the defendant recites a consideration of $10,000, and the defendant testifies that that sum was the actual consideration, and that he paid to Warren F. in cash, at the time of the delivery of the papers, the sum of $2,000 on account thereof, and $800 on account of the transfer of the McCollum lease. The complainants offered testimony to prove that the defendant had no money, and that he could not have made these payments of cash. His own testimony is that during the year prior to his departure from Michigan, and while he was a student of the law at Ann Arbor, his father paid over to him some $2,100 in satisfaction of a debt which had had its inception many years prior thereto, when the defendant was a child, and which, from $700, had, with interest, increased to $2,100 in 1889; that this money had by defendant been intrusted to the safe-keeping of Warren F. at Ann Arbor, and had been carried upon the person of defendant when he came to Oregon. In the light of the evidence, it is impossible to credit this story. The proof is that, about the time the payment is said to have been made to the defendant from his father, the latter was in great financial embarrassment. On November 1, 1888, he wrote to his brother Warren H., saying, "Fred [the defendant] was happy when he got the news that you sent him the money to go to school." On May 11, 1889, he again wrote to his brother: "I was out to Ann Arbor ten days ago, and I gave Fred seventy-five dollars. He wanted money very bad. He thinks he will get through this year. I hope he will, for the fact is I have all I can do to keep along." In 1889, after his graduation from the law school, the defendant was sued at Ann Arbor, Mich., for seduction, and in February, 1890, the suit was compromised by the payment of $500. The money was borrowed from Warren F. upon the joint note of defendant's father and the defendant. The defendant was at this time 23 years of age, and he asks us to believe that, at the time his father assumed the burden of this $500 note, he, for whose benefit the money was borrowed, had in his possession $2,100, paid to him by his father, and that both his father and Warren F. were acquainted with that fact. It is clear that the defendant had little or no money after his arrival in Oregon. On

June 18, 1890, he wrote Warren F., "I bought a horse to-day from a man who was broke and had to sell, so I do not think I will have the means to go to the city unless I go with you." At the time the defendant claims to have made the cash payment to Warren F., he left unpaid the $500 note above referred to, as well as a $200 note given by him to Warren F. for borrowed money. Those notes were still unpaid at the time of Warren's death. In view of these facts, it cannot be believed that the defendant paid cash to Warren F. on account of any part of the purchase price of the property. The true consideration for the land, although recited at $10,000 in the deed, evidently, was but $8,000, and all payments were made by the notes of the defendant.

A careful consideration of the testimony convinces me that the personal property referred to in the pleadings belonged to the estate of Warren H. Mills at the time of his death, and that it was placed in the official inventory of his estate, which was filed in the county court by the defendant on August 12, 1890. I am convinced that sheets containing that portion of the inventory and appraisement have been detached and removed from the files. The defendant and some of his witnesses, it is true, testified that at the time of the appraisement of the real estate the personal property was also appraised; that the appraisement was made at an attorney's office in Linkville, and without inspection of the property, but that the appraisement of the realty was for the purpose of filing the inventory required by law, while the appraisement of the personal property was made merely to satisfy Warren F. that the price which the defendant had agreed to pay him therefor was not inadequate. This latter statement is in itself exceedingly improbable. Warren F. was present at the time of the appraisement. He had seen the personal property. He was doubtless as well acquainted with its value as was the defendant, and, if he were not, it is not reasonable to suppose that his judgment thereon would be in any way enlightened by the guess of three residents of Linkville, who were not then in the presence of the property, and never saw it. One of the appraisers testifies that the appraisement and inventory were made, both of the personal property and the lands, as the property of the estate of Warren H. Mills, deceased. There is evidence which to my mind amounts to absolute proof that this was the case. The inventory, as now found on record, contains mention only of the real estate. The real estate is specified and described in detail upon written sheets attached to the ordinary printed form of inventory. The value of each parcel, as found by the appraisers, is set opposite its description. There is found among the effects of Warren F. Mills an account book in which appears, in his handwriting, what is described as, and purports to be, a copy of the inventory and appraisement of the estate. It was evidently made at the time the appraisement was made. The inventory in the book contains the personal property, the whole of which is appraised at $3,799.64, and the undivided one-half belonging to the estate at $1,899.82. In the sum total, at the end of the inventory, the per-

sonal property is by mistake added in at $3,799.64, instead of $1,899.-
82, making a total of lands and personalty at $11,885.14. The same
error appears in the inventory which was filed in the county court.
The sum total is there stated at $11,885.14. When the defendant's
title to the personal property was called in question, after the death
of Warren F., on the ground that he (defendant) could not purchase
property of which he was the administrator, he must have conceived
the scheme of withdrawing that property from the inventory of
the estate. When he detached the sheet containing the same, he
saw the necessity of making the values of the remaining real prop-
erty that much greater, so as to correspond with the total valuation,
which was written out in the inventory, and which could not well
be changed. A comparison with the copy of the inventory kept
by Warren F. shows the manner in which this was done. The
values of certain parcels of the real estate were raised. The value
of the second parcel was changed from $400 to $1,400; of the third,
from $400 to $409; of the fourth, from $655 to $855; of the sixth,
from $100 to $700; of the eighth, from $100 to $190; and 82 cents
was added to the value of the last parcel. These alterations were
all easily made. The sum total of the increase in the valuations
so made is exactly $1,899.82, which is the valuation of the one-half
interest in the personal property. But the fact that the value of
that property was carried into the inventory at $3,799.74, instead of
$1,899.82, was overlooked by the defendant, and the values in the
altered inventory now on file are still less, by $1,899.82, than the
sum total therein stated. No demonstration of fraud and forgery
could be more complete than that presented by this record. The
conclusion is irresistible that the one-half interest in the personal
property, when the same was purchased from Warren F. by the de-
fendant, belonged to the estate of Warren H. Mills, deceased, of
which estate the defendant was then the administrator, and was
inventoried as such by the defendant. The question arises whether
that fact renders void the sale of personal property to the defend-
ant. The law concerning the right of a personal representative to
purchase the property of his estate has in recent times been largely
modified. The preponderance of modern decisions tends to the
conclusion that such a sale may often be advantageous to the
estate, and that such advantage is the main thing to be considered.
The purchase is held to be not void, but voidable, at the option of
persons interested in the estate. Harrington v. Brown, 5 Pick.
519; Mead v. Byingtom, 10 Vt. 116; Ives v. Ashley, 97 Mass. 198;
Staples v. Staples, 24 Grat. 225; Harshman v. Slonaker, 53 Iowa,
467, 5 N. W. Rep. 685.

It is claimed, however, that the sale to the defendant is made void
by statute. Section 1166, Hill's Ann. Laws, provides:

"The order of confirmation of sale in this title mentioned is conclusive as
to the regularity of the sale and no further. All purchases of the property
of the estate by an executor or administrator, however made, whether di-
rectly or indirectly, are prohibited and if made are void."

The prohibition contained in the statute would seem to refer to
purchases made at administrators' sales,—purchases made by an

administrator from himself, either directly or indirectly. It is doubtful if it is intended to prohibit a purchase by the administrator from an heir. At the same time, such a purchase would undoubtedly be subject to the general rules which control dealings where a fiduciary relation exists. The sale would be void if any unfair advantage were taken of the heir by the executor or administrator. But it is immaterial whether or not the purchase from Warren F. Mills by the defendant is within the inhibition of the statute. The consent of the heir and sole devisee of the Warren H. Mills estate that the defendant should purchase this property, and the acceptance and retention by him of the promissory note made in payment of the purchase price, amount to such complete authorization and ratification of the transaction that its validity cannot now be questioned. Grim's Appeal, 105 Pa. St. 383; Dunlap v. Mitchell, 10 Ohio, 117. It is not contended that the purchase price was inadequate, or that the sale was procured by unfair means. Warren F. was upon the ground. He had seen the personal property, and knew its value. The one-half interest in it had been bequeathed him by his father's will. The other half he had purchased from his father's former partner. He treated it all as his own property. He sold the whole to the defendant. The sale was made in good faith. Its validity is not called in question by any creditor, and it is not shown that any right has been prejudiced thereby. Warren F. Mills was content to accept the defendant's note in payment without security. He could not, if now living, repudiate his own deliberate act in so doing, and none of the parties to this suit is in position to do more than he could have done.

I am convinced, from the evidence, that it was the intention of Warren F. Mills and the defendant that a mortgage should be executed to secure the payment of the note given for the purchase price of the land, and it is not proven that that agreement was abrogated, as testified by the defendant. It will be the decree of the court that the defendant execute a mortgage upon the land so conveyed to him, in the terms of the mortgage prepared by Warren F. Mills, and that, in case no such mortgage is executed, there be decreed to be a lien upon said property so conveyed from the date of the conveyance thereof, in lieu of such mortgage, and that the defendant pay the costs of this suit.