206 P.2d 765

**BURNS et al. v. SKOGSTAD et al.**

No. 7462.

Supreme Court of Idaho.

April 28, 1949.

Rehearing Denied June 18, 1949.

Whitla & Knudson, of Coeur d'Alene, for appellants.

230

Wm. S. Hawkins, W. F. McNaughton and H. S. Sanderson, all of Coeur d'Alene, for respondents.

TAYLOR, Justice.

Lena Josephine Hofslund, a resident of Kootenai County, died on or about June 17, 1932, leaving an estate appraised at $49,745.07. In her will she appointed her father, B. J. Skogstad (also known as Ben Skogstad) executor of her estate, without bond. Paragraphs four and twenty-seven of the will are as follows:

"IV

"My estate is not to be divided. as long as my Father and Mother are alive. They are to have the use of the income therefrom for any and all of the purposes which is necessary for the best of care in every way for them. They, or my Executor, shall be the judge as to what is required, hereby giving and granting to my Executor full and complete authority to pay over, or deliver to them, or furnish to them such sums as they shall require for any purpose whatever and for that purpose my Executor is vested with full power to

dispose of any of my estate or to convert it into cash. My executor shall also have power to reinvest any such money as may come into his hands as he deems proper to reinvest, being liable only to account for any money actually received, and not being chargeable with any error of judgment in making investments."

"XXVII

"My Executor in settling said estate shall make the payment of the specific bequests at such time as shall be convenient to do so, but shall not be required to sell any of the property in order to secure the money with which to make said payments, or to sacrifice the same, but shall use his own judgment in making said payments, but in no event shall any payments be made which would in any manner jeopardize the income sufficient to take care of and keep my Father and Mother during their life time, and unless they consent thereto the specific bequests and legacies shall not be delivered or paid over during their lifetime, but shall be reserved for the purpose of insuring them ample support as long as they live and if they deem it necessary to use the property for their own purposes it shall take precedence over any specific bequests or legacies, hereby giving and granting to my said Executor the right to sell and dispose of any property specifically bequeathed in case, in his opinion, it shall be necessary or proper so to do in order to properly take care of and support my Father and Mother hereby giving to my Executor full and complete authority in the premises."

At the time of the death of Lena Hofslund her mother and father were 72 and 74 years of age, respectively. The plaintiffs-respondents, cousins of deceased, were named in the will as residuary legatees.

The will was admitted to probate, and B. J. Skogstad was appointed executor July 9, 1932. By order approving the first account, dated December 22, 1934, the Probate Court approved the payment "to and for and on behalf of himself the sum of $3,446.40, which said sum was paid under paragraph 4 of the will."

Lena Skogstad, mother of Lena Hofslund, died July 25, 1934. A major portion of the expenditures paid to and on behalf of the executor were occasioned by her last illness and burial.

At the time of the probate proceedings, respondent Eleanore Nelson Burns lived in Chicago, Illinois; Faye Benson and Irene Thomssen lived in Spooner, Wisconsin, and Izetta Skogstad Swingen lived at Moorehead, Minnesota. In 1934, after the death of Lena Skogstad, B. J. Skogstad visited the respondents at their homes, and also visited a nephew, John Skogstad, then living at Eleva, Wisconsin. He invited John to move to Coeur d'Alene, and afterwards wired him that he had a job for him. John moved to Coeur d'Alene with his family in September, 1934. For a time he lived with his Uncle Ben.

In July, 1935, B. J. Skogstad went to the various places of residence of the plaintiffs and procured from each of them an assignment of their respective interest in the property of the Lena Hofslund estate to John Skogstad. These assignments recite a consideration of "One dollar and other good and valuable considerations to me in hand paid by John Skogstad", and authorize and direct the Probate Court of Kootenai County to distribute the property to John Skogstad.

The executor also procured from each a quitclaim deed purporting to convey all the right, title and interest of each in the real property of the estate to John Skogstad. These deeds recite a consideration of "One dollar and other good and valuable considerations", and authorize and direct the Probate Court of Kootenai County to distribute the property to John Skogstad.

At the same time each of the plaintiffs also executed and delivered to the executor a general power of attorney appointing the First Federal Savings and Loan Association of Coeur d'Alene as attorney to execute all necessary instruments "for the purpose of transferring and vesting in John Skogstad" complete title to all property of the estate. It does not appear from the record that these powers were ever exercised.

Upon the execution and delivery of these documents B. J. Skogstad gave to each of the plaintiffs his personal check for $1,250. There is no evidence that John Skogstad, a young man without money or property, ever parted with any consideration for these transfers.

Three of the plaintiffs, Mrs. Burns, Miss Benson and Mrs. Swingen appeared as witnesses at the trial and testified, over objection, to the effect that "Uncle Ben" represented to them that it would assist him in handling and closing the estate, if John, living at Coeur d'Alene, could act for them; that they would get their share of the estate as it became available, or upon his death; that it would be in their interest to execute the transfers; and that they relied on these representations. It appears that the objection to this testimony should have been sustained on the ground that the witnesses were within the inhibition of I.C.A., Section 16-202. Thurston v. Holden, 45 Idaho 724, 265 P. 697; Dowd v. Estate of Dowd, 62 Idaho 157, 108 P.2d 287. However, it was the duty of the executor in dealing with these legatees to make a full disclosure of all relevant facts and to treat them with utmost frankness. 3 Bogart Trusts and Trustees, §§ 493 and 544. The burden was upon the defendants to show that this duty was performed. This the defendants have not done. The record is silent as to what disclosures, if any, were made by the executor as to the condition, or value of the estate, or as to the interests of the legatees therein.

On January 15, 1936, the executor filed his final account and petition for distribution in the Probate Court. The petition contains the following paragraph: "Your petitioner further respectfully states and shows that he is fully informed and believes that all of interest of the residuary legatees herein, namely Faye Benson, of Spooner, Wisconsin, Irene Benson Thomssen, of St. Paul, Minnesota, Eleanore Nelson Burns, of Chicago, Illinois, and Izetta Skogstad Swingen, of Moorehead, Minn. has been by said parties and each of them sold, transferred, assigned and deeded to John Skogstad, who has purchased the same from said parties and each and all of them has presented to your petitioner assignments by each and all of said parties transfering to him their interest in all of the personal property and estate whatsoever, including a deed conveying their interest in the real estate."

Notice was given by posting. On the hearing of the petition the assignments and quitclaim deeds executed by plaintiffs were presented to the Probate Court by the petitioner, and on February 6, 1936, decree of distribution was entered, by which all of the residuary estate was decreed to John Skogstad, subject to a life estate therein in favor of B. J. Skogstad.

During the month of February, 1936, the attorneys for petitioner, by mail, advised the plaintiffs that the estate was being closed, and requested receipts for the legacies and bequests provided in the will. Receipts in full releasing and discharging the executor were signed and returned by plaintiffs, Burns and Swingen.

Mr. Whitla, attorney for the executor, testified that an agreement was entered into between Ben and John Skogstad; that Ben, the executor, would procure the residuary estate and turn it over to John, for which John agreed to care for Ben the rest of his life. John denies any such agreement and testified that he was not consulted about the arrangements made by Ben, and he assumed that transfers to him were for Ben's convenience, and that he signed anything Ben asked him to sign.

In November, 1935, B. J. Skogstad deeded his own home to John. Whitla testified this conveyance was a part of the consideration for John's agreement to care for Ben. John testified it was a gift. February 26, 1936, B. J. Skogstad gave John a check for $500. John said this was for a car which Ben had given him, and which he sold back to Ben. Whitla testified that John and Ben were not getting along so well, and it became apparent that John would not take care of Ben, and that for the $500 it was agreed between them that John would transfer to Ben all that he had received by the decree of distribution from the Lena Hofslund estate. On April 14, 1936, John assigned to Ben the stocks, notes and mortgages which were a part of the Hofslund estate. July 28, 1936, John Skogstad and wife conveyed Ben's former home back to him. At the time Ben gave John $2,000,

which John says was the consideration for the resale of the home to him. Whitla testified that it was additional consideration not only for the home, but for the transfer by John to Ben of the assets of the Hofslund estate. Later by three warranty deeds, two of them acknowledged March 10, 1937, and one November 5, 1941, John Skogstad and wife conveyed to Ben Skogstad all of the remaining real property of the Hofslund estate.

January 14, 1939, B. J. Skogstad paid to each of the plaintiffs an additional $3,750, and wrote them to the effect that that was all they would get from the Hofslund estate, and that he was keeping what he needed to take care of himself.

Neither of the plaintiffs made any inquiry concerning the disposition of the Hofslund estate, until after the death of B. J. Skogstad, which occurred December 19, 1942. B. J. Skogstad left a will by which, after a $1,000 charitable bequest, all of his estate was devised and bequeathed to defendant and appellant, Irvin Skogstad, a nephew of deceased, and cousin of John Skogstad. Irvin was also named in the will as executor, and was appointed such by the Probate Court. The property of the estate was inventoried, and appraised on March 15, 1943, at $25,068.95.

This action was commenced in July, 1943, by plaintiffs and respondents against Irvin Skogstad, as executor of the estate of B. J. Skogstad, and individually. Plaintiffs claiming the assignments and deeds made by them to John Skogstad were void, and that all of the property inventoried in the estate of B. J. Skogstad belonged to the estate of Lena Hofslund, seek to recover it from defendant-appellant, and for an accounting.

In addition, to the findings hereinbefore referred to, the trial court found, that, the $1,250 paid to each of the plaintiffs at the time of the transfers made by them, as well as the $3,750, paid to each in 1939, was of the proceeds of the estate of Lena Hofslund. This is assigned as error. But we think it is supported by the weight of the evidence.

The court further in its findings and decree lists and describes the property distributed to John Skogstad pursuant to the transfers made by plaintiffs. This finding is assailed by respondents on the ground that the evidence does not show what property of the Hofslund estate appears in the assets of the B. J. Skogstad estate, except a few items admitted in the answer. No effort was made upon the trial to show that assets of the Hofslund estate came into the possession of the defendant, except such items as appear in the inventories of both estates. Yet, the judgment entered requires the defendant to account for "all of said properties." It must be remembered that B. J. Skogstad lived and had the possession and the use and enjoyment of the assets of the Hofslund estate (in harmony with the will) for nearly seven years after the decree of distribution was made and entered.

Obviously, the executor of his estate cannot be compelled to account for property consumed or disposed of by him during his life time. However, this is a matter for further consideration and determination of the trial court upon the accounting ordered. The judgment of the trial court on this issue, not being final, will not be further considered on this appeal.

The trial court concluded and decreed that the transfers from plaintiffs to John Skogstad, and from John Skogstad to B. J. Skogstad were void as against the plaintiffs, and that plaintiffs were entitled to the remaining assets of the Hofslund estate, and ordered appellant to account. This is assigned as error, and presents the controlling issue in the case.

Section 15-745, I.C.A., provides that, "No executor or administrator must, directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale."

This being a part of the original Probate Practice Act of 1864, construed under the "whole statute" rule, might be said to have application only to sales of "property of the estate" made by the executor or administrator, as such, during the course of probate proceedings. 2 Sutherland Statutory Construction, 3rd Ed., Sec. 4703, 4704. However, as this court has held, "The office of administrator of an estate being of a highly fiduciary nature, this statute may be considered as merely declaratory of the fundamental principle of trusteeship, which inhibits the trustee from dealing with the subject-matter of the trust in any way which may inure to his personal profit." In re Estate of Blackinton, 29 Idaho 310, 158 P. 492, 498, where it was held that a sale similar to those involved here was voidable if not void.

The evidence shows that the use of the name of John Skogstad in the transfers given by the plaintiffs was a subterfuge, and that the transfers were actually for the use and benefit of the executor. The result is the same, even though it be considered as an established fact that the transfers were procured, in John's name, in consideration of an agreement by John to care for Ben. It would still be a sale, in which the executor was interested; one which would inure to his personal profit. The only consideration passing to the plaintiffs was the payment to them of a portion of their legacies in advance of the time they were entitled to receive them by the terms of the will. Coming from a fiduciary such consideration is insufficient. Under these circumstances, the transfers by the legatees are void, as between these parties. In re Estate of Blackinton, supra; Hammond v. Hopkins, 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed. 134; Bruun v. Hanson, 9 Cir., 103 F.2d 685; 3 Bogart Trusts and Trustees, §§ 483, 493, 544; Wells v. Wood, 125 Or. 38, 263 P. 54.

It is also settled that the decree of distribution did not adjudicate the validity of these transfers, and is not a bar to this

236

action. In re Estate of Blackinton, supra; Bruun v. Hanson, supra; Miller v. Mitcham, 21 Idaho 741, 123 P. 141.

Nor do we think respondents are barred by acquiescence, laches or limitations. They were all residing in foreign states, and at considerable distances from Coeur d'Alene where the probate proceedings were had. They had not seen the will of Lena Hofslund and did not know what its provisions were. True, they were advised that the estate was being closed. But they had a right to assume that the executor, standing in the fiduciary relation of trustee to them, would protect their rights. Hence the execution of receipts in full by two of them was not an acquittance, or acquiescence, because at that time they did not know what their rights were. The payment of the additional distribution made by the executor in 1939 was a recognition by him of the fact that his trust relationship to these plaintiffs continued after the closing of the estate, and it served to lull the legatees into a sense of security. And even though he told them then that that was all they would get, they still were entitled to believe that their trustee was dealing fairly with them. They were entitled to believe that he was giving them all they were entitled to under the will. There was no obligation on their part to investigate. The duty rested upon the trustee to fully advise them, and to safeguard their interests at all times. Notice of the repudiation of the trust was not brought home to them until after the death of the trustee, when upon investigation they learned that the trustee had by will attempted to transfer the residue of the Hofslund estate to appellant, Irvin Skogstad. This action was commenced about seven months after the death of B. J. Skogstad. It is evident respondents were not guilty of laches, and that the statute of limitations had not run. I.C.A., Sections 5-203, 5-204, 5-205, 5-206, 5-212, 5-215, 5-218 (4); Bruun v. Hanson, supra.

This cause was tried in 1945 before Honorable Ed. S. Elder, District Judge, who died before rendering a decision. Thereafter, pursuant to stipulation of the parties, the cause was submitted to, and determined by Honorable O. C. Wilson, another Judge of the same court, upon the records, files, exhibits, and reporter's transcript of testimony taken at the trial. The judgment of the trial court having been based upon a written record, we have weighed the evidence under the rule that in such a case the appellate court is in as good position to find the facts as was the trial court. Woodruff v. Butte & Market Lake Canal Co., 64 Idaho 735, 137 P.2d 325.

Judgment is affirmed with costs to respondents.

HOLDEN, C. J., GIVENS and PORTER, JJ., and McDOUGALL, Dist. J., concur.