319 P.2d 189

Melvin E. GIBBINS, Vernice Theriault Cromer, Annabelle Fitzgerald and Effie May Glenn, Individually, and as Heirs of Robert E. Andrews, Deceased, Plaintiffs-Appellants,

v.

Gladys McLAUGHLIN and Robert McLaughlin, wife and husband, individually, and Gladys McLaughlin, as Administratrix of the Estate of Robert E. Andrews, Deceased, Defendants-Respondents.

No. 8531.

Supreme Court of Idaho.

Dec. 12, 1957.

Leslie McCarthy, Lewiston, for appellants.

412

J. H. Felton, Lewiston, for respondents.

SMITH, Justice.

Appellants are the legal heirs, surviving brother and sisters of the half blood, and and respondent Gladys McLaughlin is a surviving first cousin, of decedent Robert E. Andrews, who died March 25, 1947.

The probate court of Idaho County, April 12, 1947, appointed respondent Gladys McLaughlin administratrix of decedent Andrews' estate.

Decedent's estate consisted of a relatively small amount of personalty, and about two thousand acres of meadow, grazing and timber lands some situate in the vicinity of Joseph Plains and some on the slopes of the Salmon River canyon in Idaho County. Appraisers appraised the real property at the value of $8,780 and the personalty at $1,385, totaling $10,165.

While the estate was in process of probate, appellant heirs and their respective spouses, executed and placed with The First National Bank of Cottonwood, hereinafter called the Bank, for delivery, their warranty deeds, dated July 24, 1947, conveying the real property to Minnie L. and James O. Maher, wife and husband. The Mahers also executed and placed with the Bank for delivery their warranty deed likewise dated July 24, 1947, conveying the real property to respondent Gladys McLaughlin and her husband. Gladys McLaughlin is the niece of Minnie L. Maher.

The decree of distribution of decedent's estate entered September 8, 1947, recites that appellant heirs had disposed of their interests in the property of decedent's estate, both real and personal, for the inventoried value of $10,165, plus a small amount of after discovered property, to Minnie L. Maher and James O. Maher, wife

and husband, as shown by the referred to warranty deeds and the administratrix' account, exhibited to the probate court. The court by such decree distributed the property of the estate, remaining after payment of debts and expenses of administration, i. e., $5,549.26, share and share alike to appellant heirs. The court then approved the heirs' conveyance and transfer of the real and personal property and distributed it share and share alike to Minnie L. and James O. Maher, husband and wife, as purchasers from the heirs. The court then discharged respondent from her office as administratrix by its decree of discharge entered September 8, 1947. The decree of distribution was filed for record September 9, 1947, and duly recorded in the office of the recorder of Idaho County.

Each heir received through the Bank a distributive share of decedent's estate. The Bank then caused the warranty deeds to be filed for record September 9, 1947, and they were duly recorded in the office of the recorder of Idaho County.

November 1, 1948, respondents, McLaughlin and wife, executed their deed granting and conveying to Wm. Berklund Forest Products all merchantable Ponderosa timber growing in and upon said real property in consideration of the principal sum of $5,110 to be paid in installments over a period of five years with interest on deferred payments. That deed was filed for record February 1, 1951, and duly recorded in the office of the recorder of Idaho County.

During 1951 respondent Robert McLaughlin conveyed said lands to respondent Gladys McLaughlin pursuant to a marriage settlement and proceedings culminating in their divorce. Respondent Gladys McLaughlin continued in possession of the lands claiming the same as her sole and separate property.

Appellants filed their complaint in this action July 19, 1956. They filed their amended complaint October 2, 1956. They allege that all the deeds of conveyance were and are fraudulent as a matter of law; also fraudulent as a matter of fact since executed at the request of respondent administratrix without full disclosure on her part of the extent and value of the property of the estate, of which appellants had neither knowledge nor ability to make inquiry, and because of inadequacy of the consideration paid.

Appellants allege discovery of fraud in June 1956 and institution of the action upon respondents' refusal of settlement demands. Appellants tender the amounts they received for the property or in the alternative allege their willingness to comply with terms as may be imposed by the court.

Appellants seek cancellation of the deeds and delivery of the property to them; also an accounting by respondents and payment of reasonable rental during their occupancy of the real property.

Respondents, each by separate answer, denied the allegations of the complaint and pleaded in bar the statute of limitations. Respondent Gladys McLaughlin pleaded laches of appellants; also her ownership of the property free and clear of any interest of appellants therein, her adverse possession and that of her predecessors in title, and payment of taxes on the property, for more than five years.

The trial court at the conclusion of the trial entered findings of fact and conclusions of law, and by its decree denied any relief to appellants, quieted title to the real property in respondent Gladys McLaughlin and dismissed the action with prejudice. Appellants perfected an appeal therefrom.

Appellants assign error of the trial court in decreeing that appellants have no title or interest in the real property of which Robert E. Andrews died seized; in not setting over the property to appellants, and in not requiring an accounting by respondents.

The issues narrow to the following principal questions. Is the transaction of purchase of the interests of appellant heirs in the real property, by respondent administratrix and her husband, through the interposition of a third party, void or voidable? Did respondents practice fraud by way of false representations to, or concealment from appellant heirs? Was a fair and adequate consideration paid for the real property? Does laches on the part of appellants bar the action?

Appellants assert that on statutory grounds alone the transaction is void, citing I.C. § 15–742, which provides: "No executor or administrator must directly or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale."

In Burns v. Skogstad, 69 Idaho 227, 235, 206 P.2d 765, 769, this court, regarding such section of the statute, stated:

"The office of administrator of an estate being of a highly fiduciary nature, this statute may be considered as merely declaratory of the fundamental principle of trusteeship, which inhibits the trustee from dealing with the subject-matter of the trust in any way which may inure to his personal profit."

The principle to be applied where a trustee purchases the trust property from the beneficiary, appears settled by the overwhelming weight of authority. It is stated in 3 Pomeroy on Equity Jurisprudence, sec. 958d, p. 814 (5th Ed.1941), to this effect, that a purchase by a trustee from his cestui que trust is not void, but is a voidable transaction subject to being set aside on behalf of the beneficiary, provided a want of equity and fair dealing appears and provided the beneficiary acts to avoid the transaction with reasonable promptness. In re Estate of Blackinton, 29 Idaho 310, 328, 158 P. 492, contains obiter expres-

sions of ambiguous import on the subject, whereas Burns v. Skogstad, supra, recognizes such rule as applicable under the statutory prohibition of I.C.A. § 15–745 now I.C. § 15–742. See also Golson v. Dunlap, 73 Cal. 157, 14 P. 576; Haight v. Pearson, 11 Utah 51, 39 P. 479; Mills v. Mills, C.C.Or.1893, 57 F. 873, 878; Veeder v. McKinley-Lanning Loan & Trust Co., 61 Neb. 892, 86 N.W. 982; Littell v. Hackley, 6 Cir., 1903, 126 F. 309; French v. Phelps, 20 Cal.App. 101, 128 P. 772; Broaddus v. Broaddus, 144 Va. 727, 130 S.E. 794; In re Hoya's Will, 173 Wis. 196, 180 N.W. 940; Johnson v. Johnson, 85 Okl. 274, 206 P. 205; Plant v. Schrock, 102 Okl. 97, 227 P. 439; Norton v. Fuller, 68 Utah 524, 251 P. 29; Dees v. Dees, 169 Okl. 598, 38 P.2d 508; Dorsey v. Green, 202 Ga. 655, 44 S.E. 2d 377; Owens v. Owens, 196 Va. 966, 86 S.E.2d 181; Nelson v. Gossage, 152 Kan. 805, 107 P.2d 682; First Nat. Bank of Portland v. Connolly, 172 Or. 434, 138 P.2d 613, 143 P.2d 243; Eads v. Brinegar, 306 Ky. 343, 207 S.W.2d 772; In re Timken's Estate, 177 Kan. 545, 280 P.2d 561; Black on Recission and Cancellation of Contracts, 2nd Ed., Vol. 1, sec. 48; Perry on Trusts, 7th Ed., Vol. 1, sec. 205; Restatement of the Law of Trusts, Vol. 1, sec. 170; 33 C.J.S. Executors and Administrators § 240, p. 1246, and § 268, p. 1283; 21 Am.Jur., Executors and Administrators, sec. 626, p. 733; Annotations, L.R.A.1918B, p. 26; Annotation, 111 A.L.R., p. 1362; Compare Hammond v. Hopkins, 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed. 134, with the earlier case upon which appellants rely of Michoud v. Girod, 4 How. 503, 45 U.S. 503, 11 L.Ed. 1076. We therefore conclude that the sale by appellant heirs of their distributive interests in decedent's real property, and purchase thereof by respondent administratrix and her husband is not a void transaction as a matter of law.

The evidence appears undisputed on the point that respondents did not make any actual misrepresentation relative to the property of decedent's estate.

The main question appears to be whether respondents were guilty of fraudulent concealment of the extent of decedent's lands situate on Joseph Plains, i. e., the Eller place and lands in the immediate vicinity, comprising some 400 acres of meadow and timber lands which appear to have been acquired by Robert E. Andrews, independent of his inheritance from his father, and whether appellants had knowledge of such extent of decedent's property.

The questions, of alleged material fraudulent concealment and inadequacy of consideration, require a brief review of the evidence.

We are mindful of the rule, in approaching these questions, that where a trustee deals with the property of his cestui que trust, as is the case here where the administratrix, through the interposition of a third party, purchased the interests of the beneficiaries of the trust, such im-

poses upon the trustee the burden of proving the fairness of the transaction; he must negative any fraud on his part. This court recognized such rule in the case of Burns v. Skogstad, 69 Idaho 227, 232, 206 P.2d 765, 767, in the following language:

"  *   *   *  it was the duty of the executor in dealing with these legatees to make a full disclosure of all relevant facts and to treat them with utmost frankness.  *   *   *  The burden was upon the defendants to show that this duty was performed."

In McNabb v. Brewster, 75 Idaho 313, 320, 272 P.2d 298, 302, appears the following statement of the rule amply supported by authorities:

"In cases where the facts do raise an inference of fraud or overreaching, the courts are almost unanimous in holding that the presumption of undue influence arises, and that the burden is then cast upon the grantee or donee to prove by clear and convincing evidence that the transaction was fair and just and free from fraud or undue influence."

See also 33 C.J.S. Executors and Administrators § 304 b (2), p. 1350; 21 Am.Jur., Executors and Administrators, sec. 632, p. 736.

At the outset, appellant Gibbin, who had resided in the State of Washington for a time, testified that during early July, 1947, he made investigation of decedent's estate and extent thereof on behalf of himself and his sisters, appellants Mrs. Cromer, who then lived at Avery, and Mrs. Glenn, who then lived near Lewiston, Idaho. The testimony of administratrix shows that appellant Gibbins also informed her of his representation of his sister, Mrs. Fitzgerald, then residing at Yakima, Washington. Such testimony is not disputed by any of the parties, all of whom testified herein.

Appellant Gibbins admitted that he was acquainted with legal designations and acreage of land descriptions.

He testified that he examined the Idaho County probate court files and checked the inheritance of Robert E. Andrews from the estate of his father, Eugene Andrews, deceased, his testimony, on direct examination in that regard, in part being as follows:

"A.  *   *   *  I stopped at Grangeville here and checked the records of the inheritance of Robert from his father.

*   *   *   *   *   *

"Q. And you looked at that file? A. Yes.

"Q. And did you look at the description of the property? A. Yes.

"Q. —that was inherited by Robert? A. That's right."

And on cross-examination he testified relative to his examination of the probate court file of the Robert Andrews estate; that the file contained a description of the land of the

estate and that the number of acres was apparent to him from the inventory and appraisement. He admitted that after examining the files of the probate court he discussed decedent's estate with respondent administratrix and, quoting him, "She told me what his land consisted of; she told me the amount of the acres, yes." He and his sister Mrs. Glenn conferred about decedent's estate with the estate's attorney; also, he conferred with the Bank's officials concerning the estate.

Appellant Gibbins made a trip on horseback for the purpose of inspecting the land, in company with respondent Robert McLaughlin and another. He inspected the land situate on the slopes of the Salmon River canyon. He was in the vicinity of the land "on top of the canyon", i. e., on Joseph Plains, where the Eller Place and other land in the immediate vicinity were situate; at that place they could see nearly all that land and the timber thereon. Mr. McLaughlin testified that there they discussed the land.

The record is replete with evidence of communications between appellant sisters, and by them with the estate's attorney, pointing to the sisters' knowledge of the acreage and extent of the lands of the estate, including the Eller Place and timber thereon; and in one such communication is a suggestion that the Eller Place be kept until the timber thereon could be cleared.

The evidence is undisputed showing that the heirs received a letter dated June 25, 1947, from the estate's attorney advising them of the $10,165 appraised value of all the property of the estate, and that the land had been appraised at $8,780; also advising that decedent's debts and the expenses of administration would amount to between $4,000 and $5,000 for which reason, unless the heirs assumed the indebtedness, the property should be sold in order to pay the debts and expenses; also advising that in his opinion "the lands will bring considerable over the appraised value."

The appraisers appointed by the court to appraise the property of the estate were shown to be conversant with land values in the vicinity. Each testified that he appraised the property to the best of his judgment according to values in the community.

Although appellant heirs had all the information and advice hereinbefore pointed out, nevertheless they evinced their desire to sell their interests in the land at the appraised value to respondents.

They were then further advised by the Bank, by its July 24, 1947, letter to them, concerning the details of handling the transaction, whereby each heir and respective spouse were requested to execute an enclosed warranty deed; also that the Bank would hold the executed deeds as escrow holder until the estate was closed, and then deliver them when the money amounting to some ten thousand dollars had been paid in to the Bank, and that the heirs would receive the balance thereof remaining after

paying decedent's debts and the expenses of administration. The parties, appellant heirs and the Bank, duly attended to all the details mentioned in the Bank's letter.

The evidence also shows that during the time decedent's estate was being probated there wasn't any sale for the timber. There was no road into the vicinity of the timber suitable for its transportation. The timber on decedent's land, as well as that on 2,000 acres of adjoining land, was regarded as having no commercial value because of inaccessibility to market and lack of transportation facilities.

It was not until more than a year after the estate had been closed, i. e., during November, 1948, that the timber deed was executed which was filed for record February 1, 1951.

Appellant Gibbins returned to the community wherein was situate the Robert E. Andrews' estate in November, 1952, and worked for respondents about two weeks; his work included hauling hay from the meadow lands on Joseph Plains, which had constituted a part of the estate. He then lived and continued to live at Kamiah in Lewis County. He visited Cottonwood and Grangeville and vicinity at sundry times.

It appears during the year 1953 appellants, believing that the land was worth more than the appraised value, obtained the services of a timber cruiser who cruised the timber on the land and mapped the different classifications of timber, brush and grass lands. The cruiser admitted he did not appraise the value of the land as of 1947. He was not shown as qualified to testify, and properly was not allowed to testify, concerning the value of the timber in 1947 inasmuch as he was not shown to have knowledge of timber sales or value of the timber during that year in that vicinity. The cruiser also testified that the only road from Cottonwood up to Joseph Plains was posted as being in part a private road; also that the only log transport across the Salmon River was a private line or cable located up the river from the bridge; also that logs could not be transported across the bridge. He further testified that the files of the Forest Service indicated no timber sales in the vicinity of decedent's lands during 1947.

The evidence is conclusive on the point that no market for the timber existed during the time decedent's estate was in process of probate. The fact that some fourteen months after the estate was closed a timber company and respondents had dealings concerning the timber may be regarded as a subsequent advance in value; but such subsequent advance can have no bearing upon the value as of the time of probate of decedent's estate. A fair value which must be considered as adequate was paid by respondents in accordance with the findings of value by appraisers duly appointed for that purpose by the probate court.

Golson v. Dunlap, 73 Cal. 157, 14 P. 576, 579, was an action by a devisee to set aside a

sale to an executor on the ground of inadequacy of consideration. Therein the California Supreme Court ruled that in such a case, in order to establish the fact of adequacy of consideration, it is not necessary to show that more than a fair, reasonable value, and not necessarily the full value at the time of the transaction, was paid for the property; that a subsequent advance in the value of the property will not be regarded as bearing upon the question of inadequacy of consideration. "The fair value at the time, under all the circumstances, must be the criterion." See also Highland Park Inv. Co. v. List, 27 Cal.App. 761, 151 P. 162.

The facts hereinbefore set out show that respondents carried the burden of proof of neither fraudulent concealment nor inadequacy of the consideration paid, on their part. The finding of the trial court that appellants failed to prove any fraud on respondents' part, is fully supported by clear and convincing evidence, substantial and competent in nature, though in some instances conflicting.

Where the findings of the trier of facts are supported by substantial and competent though conflicting evidence the findings will not be disturbed on appeal. I.C. § 13–219; Watkins v. Watkins, 76 Idaho 316, 281 P.2d 1057; Land Development Corp. v. Cannaday, 77 Idaho 237, 290 P.2d 1087; Summers v. Martin, 77 Idaho 469, 295 P.2d 265; Zenier v. Spokane International R. Co., 78 Idaho 196, 300 P.2d 494.

This universal rule has been applied in fraud cases with equal consistency. Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347; Summers v. Martin, supra.

The foregoing determinations of the principal questions involved in this case renders moot the question of laches.

The judgment of the trial court is affirmed. Costs to respondents.

KEETON, C. J., and PORTER, TAYLOR and McQUADE, JJ., concur.