(August 2, 1924.)

LEWIS E. HARRINGTON and CLARA I. HARRINGTON, Appellants, v. HARVEY J. HIGH and HARRIET HIGH, Respondents.

[228 Pac. 883.]

PRINCIPAL—AGENT—CONVEYANCE—ADEQUACY OF CONSIDERATION—FAIR-NESS—BURDEN OF PROOF.

In an action to set aside a conveyance from a principal to an agent, the burden is on the latter to show that the consideration is adequate and that no unfair means were used.

APPEAL from the District Court of the Tenth Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action to set aside conveyance. Judgment for defendants. *Reversed.*

Benjamin F. Tweedy, for Appellants.

Where the proof shows that a real estate agent has acquired from his principals the subject matter of the agency, and the transaction is seasonably attacked, the law presumes that the transaction was fraudulent, and puts the burden on the real estate agent to allege and prove that he dealt honestly, fairly and justly with his principals and got no advantage of them. And if he fails to allege and prove that he dealt honestly, fairly and justly with, and got no advantage of, his principals, the deal will be set aside by a court of equity. (*Green v. Peese*, 92 Iowa, 261, 60 N. W. 531; *Webb v. Marks*, 10 Colo. App. 429, 51 Pac. 518; *Williams v. Lockwood*, 175 Cal. 173, 166 Pac. 587; *Evans v. Evans*, 196 Mo. 1, 93 S. W. 969; 2 C. J., sec. 682, p. 930; 31 Cyc. 1443, 1444; *Stone v. Moody*, 40 Wash. 680, 84 Pac. 617, 85 Pac. 346, 5 L. R. A., N. S., 799; *Mumford v. Smith*, 89 Wash. 98, 154 Pac. 153; *Parker v. Ross* (C. C. A.), 234 Fed. 289; *Archer v. Lapp*, 12 Or. 196, 6 Pac. 672; *Waterbury v. An-*

*drews,* 67 Mich. 281, 34 N. W. 575; *O'Neill v. Mutual Life Ins. Co.,* 51 Utah, 592, 172 Pac. 306; *Rouse v. Bolen,* 17 Ariz. 14, 147 Pac. 736; *Hartwig v. Clark,* 138 Cal. 668, 72 Pac. 149; *Palmiter v. Hackett,* 95 Or. 12, 185 Pac. 1105, 186 Pac. 581; *Rochester v. Levering,* 104 Ind. 562, 4 N. E. 203; *Cook v. Burlin etc. Co.,* 43 Wis. 433; *Porter v. Woodruff,* 36 N. J. Eq. 174; *Young v. Hughes,* 32 N. J. Eq. 372; *Farnum v. Brooks,* 9 Pick. (Mass.) 212; *Moore v. Mundlebaum,* 8 Mich. 433; 2 Pom. Eq. Jur., sec. 959; Story on Equity Jurisprudence, 10th ed., sec. 246.)

Fred E. Butler, for Respondents.

To rescind an executed contract for the conveyance or exchange of real property the plaintiff must plead and prove fraud. (27 R. C. L. 411.)

Inadequacy of the price paid for land is not sufficient to prove fraud but, "Gross inadequacy of price may, however, in connection with other circumstances, slight in their nature, demonstrate such imposition or undue influence as to shock the conscience, as has been said, and amount in itself to conclusive and decisive evidence of fraud for which a court of equity will afford relief by way of rescission." (27 R. C. L. 389.)

McCARTHY, C. J.—Appellants, husband and wife, brought this action to set aside a deed executed and delivered by them to respondents, husband and wife, also a contract entered into between appellants and respondents, and to recover the value of certain livestock. The material facts alleged in the complaint are as follows: Appellants and respondents were negotiating for an exchange of 160 acres of farm land owned by appellants and 80 acres of farm land owned by respondents, all situate in Nez Perce county, Idaho; they had entered into one written agreement, pursuant to which deeds were placed by both parties in escrow; this agreement was abandoned and rescinded because of inability to perform it according to its terms; thereafter they renewed negotiations, and arrived at an oral agreement

whereby appellants would deed to respondents their 160 acres with an encumbrance of $5,000, respondents would deed to appellants their 80 acres with an encumbrance of $2,000, and respondents would pay a sum of money to appellants, the exact amount not being mentioned in the complaint; the respondent Harvey J. High undertook to have this oral agreement reduced to writing; the written agreement, as dictated by him and prepared by the scrivener, gave appellants an option to purchase the 80 acres by paying respondents $3,000 in 11 months' time, gave appellants the right to possession in the meantime and to two-thirds of the crop, provided that, on failure to pay the $3,000 at the time stated, all rights of appellant should be forfeited; respondent Harvey J. High represented that the only reason for signing the written contract was to furnish written evidence of the trade and give him necessary time to execute and deliver his deed; the written agreement was read to appellant Lewis E. Harrington, but he did not understand it; it was not read to appellant Clara I. Harrington before she signed it; respondent Harvey J. High told her that it was the same as the oral understanding for the exchange of the farms; at the time this written agreement was executed, appellants delivered a deed to their 160 acres to respondents, but did not receive a deed from respondents to the 80 acres; appellants' land was worth from $7,500 to $8,000 over and above the $5,000 mortgage thereon and respondents' equity in their land was worth not more than $5,000; respondent Harvey J. High charged and collected from appellants a real estate commission for the transaction, which was paid by turning over certain livestock and implements; appellants received no consideration for their deed; upon learning the true nature of the written agreement which they had executed appellants notified respondents that they rescinded the contract. Appellants pray that the deed and contract be canceled, and that they recover the value of the personal property in question.

Respondents in their answer deny the material allegations of the complaint as outlined above. They allege in sub-

stance that appellants and respondents reached an oral agreement for the exchange of their lands, and that the written agreement entered into, and which appellants seek to set aside, represents the true agreement.

The court finds that the written agreement in controversy represented the true. agreement of the parties; that no fraud or misrepresentation was practiced by respondents, or either of them, upon appellants; that a valuable consideration was given appellants by respondents for the deed to the 160 acres, said consideration being the written agreement; that the two farms were of about the same value; that appellants were well acquainted with the 80 acres in question and its value; that appellants entered into the written contract with full knowledge of the facts and were fully advised in regard to the nature and import of the contract. From a judgment for respondents this appeal is taken. Of the many specifications of error set forth by appellants the only one which merits consideration is that the judgment is against the evidence.

Appellants neither alleged nor proved a mutual mistake of fact. The allegations of the complaint are not sufficient to charge fraudulent misrepresentations. Failure or inability of a party to read a written contract is not ground for setting it aside. (*Constantine v. McDonald,* 25 Ida. 342, 137 Pac. 531.) While appellants allege total failure of consideration they have failed to prove it, The so-called option agreement was a legal consideration. In view of the whole record appellants must fall back upon the contention that the relation which existed between them and respondents, by reason of the fact that they had listed their land for sale with respondent Harvey J. High, and gross inadequacy of the consideration received by them for their land, make a case of presumptive fraud which justifies the interposition of equity.

The evidence discloses the following facts. Respondent Harvey High was a real estate broker with whom appellant Lewis Harrington had listed the 160 acres for sale. Five witnesses familiar with this land testified it was worth

$12,000. After he got the deed High listed it for sale with the witness Burnham at that price. One witness testified for respondents that it was worth $7,000 to $8,000 and that High offered to sell it to him for $8,000 after he acquired it. This witness does not say whether this means $8,000 subject to the mortgage. If so his estimate agrees with that of appellants' witnesses. The Federal Land Bank actually loaned $5,000 on this land. This strongly bears out appellants' contention that it was worth $12,000 rather than respondents' contention that it was worth only $8,000. Four witnesses familiar with the land testified on behalf of appellants that the 80 acres was worth from $5,000 to $6,000. High listed it for sale with Burnham at $5,000. Respondent Harvey High testified that it was worth as much as the 160. The improvements on the 160 were better than those on the 80. Shortly after their first negotiations Harrington and High signed a memorandum expressing an intention to exchange the two places just as if both were clear of indebtedness. Appellants had applied to the Federal Land Bank for a loan of $5,000 on the 160, which had not been granted at the time of the negotiations for the exchange. They later entered into a written agreement providing that appellants should convey the 160 acres to respondents free of all encumbrances except the lien for the 1921 taxes and a mortgage for $2,000. Respondent should convey to appellants the 80 acres; respondent should pay $2,000 to appellants which should be used for the purpose of paying off any encumbrances against the 160 acres except the 1921 taxes and $5,000 mortgage to the Federal Land Bank, the exact application of this $2,000 to be controlled by respondents. Appellants should assign to respondents their claim against the Federal Land Bank for the proceeds of the $5,000 mortgage. In accordance with this agreement, a deed to the 160 acres from appellants to respondents and a deed to the 80 acres from respondents to appellants were placed in escrow. Subsequently it was found that this written agreement could not be performed, as the money paid by the Federal Land Bank on the $5,000 mortgage was seized and

applied by creditors of Harrington in payment of his debts including a $2,000 mortgage to the First Bank of Culdesac, being the mortgage referred to in said written agreement. The written agreement was abandoned and rescinded but the parties still continued to negotiate. Appellants contend that, as a result of these negotiations, it was verbally agreed that respondents were to take the 160 acres subject to the $5,000 mortgage, appellants were to take the 80 acres subject to a $2,000 mortgage and respondents were to pay appellants $1,000 to boot. On the contrary, respondent High testified that a subsequent written agreement which they entered into embodied the true result of their negotiations. This is an agreement giving appellants an option to purchase the 80 acres from respondents; according to its terms appellants must pay respondents $3,000 with eight per cent interest within eleven months. Upon their doing this respondents will deed the 80 acres to them. If they do not make the $3,000 payment their rights shall be forfeited. The 80 acres is to be conveyed subject to a mortgage of $2,000. Appellants are to be entitled to possession of the premises and crops raised during the life of the contract, provided that respondents shall have a lien on one-third of the crop to secure payment of the taxes and interest. This agreement was reduced to writing by a lawyer named Chance under the directions of High. Appellants authorized Chance to deliver to High the deed to the 160 acres which had been placed in escrow under the prior agreement, and to destroy the deed to the 80 which the Highs had placed in escrow under that agreement. High testified that he told Harrington he need not be afraid of his deeding the land to somebody else for he knew the consequences and was not ready to go to the "pen" yet. When asked why he did not deliver appellants a deed to the 80 acres and take a mortgage back for the $3,000, he said "Because there was $2,000 on the 80." High told the witness Cleveland that certain personal property turned over to him by appellants, consisting of machinery and livestock, would take care of the commission. High testified that this property was to go to him as

part of the verbal understanding. Nothing is said about it in the final written agreement. High testified he did not think it necessary to mention this personal property and the deed to the 160 acres in the final agreement because those matters had already been taken care of. Chance, the lawyer who drew the final agreement, testified that High did most of the talking, that Harrington did not say much, and that he, Chance, read the completed instrument to Harrington before he signed it. Chance asked High why he did not give a deed to the 80 and take a mortgage back, and High replied, "Well, Mr. Harrington wants it that way." Chance testified that he brought the matter up because he was "a little bit curious." He further testified that, according to his understanding, the option contract was the consideration for the deed to the 160 acres. Harrington's testimony shows him to be a man of little intelligence, by no means a match for a real estate broker like High in the complicated and shifting negotiations disclosed by this record. On the trial, he became greatly confused both on direct and cross examination, and, with the consent of both counsel, was finally excused by the court before finishing his testimony. Mrs. Harrington's testimony shows that she did not have a clear idea of the transaction and had had no experience which would make her a match for respondent High in such dealings. The effect of the optional contract if carried out would have been that High would have acquired personal property worth several hundred dollars and $3,000 cash, in addition to the 160 acres, worth $12,000 according to the preponderance of the evidence, with a $5,000 mortgage against it, the net value of all this being something like $10,000. On the other hand, Harrington would have acquired the 80, which the preponderance of the evidence shows to be worth not to exceed $6,000, with an encumbrance of $2,000, the net value being $4,000. But appellants did not even get the 80 acres. All they got for their $7,000 equity in the 160 was an option to purchase the 80. The only reasonable inference is that the consideration was grossly inadequate and appellants were overreached. If

they had been dealing as strangers, at arm's-length, this would not be sufficient ground to set aside the conveyance. But such were not the facts. High was a shrewd real estate broker who had been employed by appellants to sell the 160 acres. Both the appellants seem to have trusted him, and they were absolutely no match for him in such dealings.

"In an action to set aside sale of real estate from principal to agent, where latter obtains any benefit from the transaction, the burden is on him of showing that an adequate consideration was paid, and that no unfair means of any kind were used by him to bring sale about, since the relation of principal and agent is fiduciary in character." (*Williams v. Lockwood,* 175 Cal. 598, 166 Pac. 587. See, also, *Jensen v. Sidney Stevens Implement Co.,* 36 Ida. 348, 210 Pac. 1003; *Green v. Peeso,* 92 Iowa, 261, 60 N. W. 531; *Webb v. Marks,* 10 Colo. App. 429, 51 Pac. 518; 1 Story's Equity Jurisprudence, 14th ed., sec. 438; 2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 959.) Applying the above well-established principle to the facts shown in this record, we conclude that the burden was on respondents to show that an adequate consideration was paid, and that no unfair means were used to bring about the delivery of the deed to them, and that they did not sustain this burden. We conclude that, for the reasons given above, the evidence is insufficient to sustain the judgment. Accordingly the judgment is reversed and the cause remanded to the district court, with orders to enter judgment in favor of appellants, setting aside the deed and contract in question, and for the return of the personal property involved. Costs to appellants.

Budge, William A. Lee and Wm. E. Lee, JJ., concur.

Petition for rehearing denied.