## RED TOP CAB CO. v. HANCHETT et al.
### No. 2640.

District Court, N. D. California, S. D.
March 21, 1931.

John L. McNab and J. C. McKinstry, both of San Francisco, Cal., for plaintiff.

William H. Hunt and Maxwell McNutt, both of San Francisco, Cal., and Hugh McCurdy, of San Mateo, Cal., for defendants.

KERRIGAN, District Judge.

Plaintiff herein, Red Top Cab Company, seeks relief in equity against defendant Hanchett, its former president, general manager, and sole stockholder of record, because of the fact that during the period when he was connected with the Red Top Cab Company in these various relationships he organized and operated a competing company, the Green Top Cabs, Limited, to the injury of plaintiff. Green Top Cabs, Limited, is also a defendant of record, but, for purposes of convenience in discussion, Hanchett may be regarded as the sole defendant.

To make the position of the parties clear, the history of the various transactions in-

volved must be stated somewhat in detail. In 1929, Red Top Cab Company was operating light taxicabs on a low fare basis in San Francisco in competition with other companies, and had secured a considerable amount of business and an extensive good will. Yellow and Checker Cab Company, Cons., operating heavier cabs at a higher rate, was a competitor. Officers and directors of that company, desiring to effect what amounted to a consolidation of their company with Red Top Cab Company, without impairing such part of its good will as arose from its position as a competitor with their own larger company, determined to buy all of the stock of Red Top Cab Company, for the benefit of the Yellow and Checker Cab Company, Cons., but to do so using the name of another. Upon inquiry they learned that defendant would be a satisfactory person for this purpose. He had operated an automobile stage line, which he had just sold, had independent means, and was such a person as might reasonably be expected to buy such a company as the Red Top Cab Company. Accordingly, in October, 1929, after negotiations, defendant bought all of the stock of the Red Top Cab Company (the funds being furnished by the Yellow and Checker Company), and became a director, president of the company, and sole stockholder of record, except for such shares as were necessary to qualify the other directors. The stock was indorsed over to Yellow and Checker Cab Company, Cons., and deposited with its attorney. At about the same time a contract of employment was entered into between defendant and the Yellow and Checker Cab Company, Cons., by its president, by which defendant became the manager of the Red Top Cab Company for one year at a salary of $1,000 per month, it being agreed that, in the event that the contract was terminated by the cab company prior to the expiration of the year, defendant should be paid salary due for the remainder of the term.

At the time when defendant assumed control of plaintiff corporation, permits to operate taxicabs in San Francisco were available to all, no certificate of public convenience and necessity being required. In November, 1929, steps were taken to secure the passage of an ordinance, finally enacted December 20, 1929, making such certificates necessary, and giving a new value to permits outstanding and available for use at the time when the ordinance was passed.

After the passage of the ordinance, and about the first week of February, 1930, defendant arranged for the purchase, for his own account, of sixty outstanding permits. March 11, 1930, he caused Green Top Cabs, Limited, to be incorporated, he being substantially the sole stockholder and president of the new corporation. March 22, 1930, after a newspaper advertising campaign, Green Top Cabs, Limited, commenced operations. The evidence shows that the personnel of the new corporation included the assistant general manager, assistant garage superintendent, a dispatcher, a receiver, and upwards of fifty drivers, all formerly employed by Red Top Cab Company. It also appears that defendant caused a bulletin to be posted upon the bulletin board, maintained to notify Red Top drivers of matters of general interest to them, announcing the organization of Green Top Cabs, Limited, and containing the phrase "You, too, may graduate to Green Top." In the early stages of organization of Green Top Cabs, Limited, it further appears that the garage and shops of Red Top Cab Company were used to some extent for the storage and servicing of Green Top cabs. At a later date, and while efforts were being made to procure a transfer of the stock on the books to the Yellow and Checker Cab Company, Cons., and to secure defendant's resignation as director and his ouster as manager, defendant procured payment to himself from the Red Top treasury of the balance of the yearly salary agreed upon in the contract referred to above, this balance being $4,000.

The records of business done and receipts therefrom of the Red Top Company show an immediate and significant decrease following the entry of Green Top Cabs, Limited, into the field as a competitor.

During all of this period, and up to May 17, 1930, defendant was still chief stockholder of record, director, president, and general manager of plaintiff corporation, and it is plaintiff's claim that defendant's organization of Green Top Cabs, Limited, and his operation of that company under the circumstances and in the manner related, was in violation of the fiduciary relationship existing; and that plaintiff is entitled to all of the benefits arising out of defendant's operations, as well as to damages for the injury suffered. Defendant, on the other hand, urges three defenses: First, that he was not precluded from entering into business in competition with plaintiff, and that there is no basis for the intervention of equity to protect any interest of plaintiff in defendant's business or the profits therefrom; second, that all of defendant's acts were in pursuance of an

understanding had between himself and officers of the Yellow and Checker Cab Company, Cons., prior to his entry into Red Top Cab Company, and that they were acquiesced in by these officers so that plaintiff is now estopped to object; third, that plaintiff does not come into equity with clean hands.

The theory of the last defense seems to be that, because the Yellow and Checker Cab Company, Cons., the beneficial owner of the stock of plaintiff, placed defendant in a position of apparent ownership and control of plaintiff corporation as a "dummy," to preserve the good will of Red Top as an independent company, equity will not intervene to give Red Top Cab Company relief on account of whatever wrong defendant may have done that company. There is no evidence that the virtual consolidation of the two companies created a monopoly; the only charge is that the real ownership of the stock of plaintiff and the identity of the controlling interests were concealed from the public.

The maxim that he who comes into equity must come with clean hands is applicable only where the party charged has been guilty of misconduct which relates directly to the very transaction concerning which complaint is made. "The misconduct must have infected the cause of action so that to entertain it would be violative of conscience." 21 C. J. 187; Kinner v. Lake Shore & M. S. Ry. Co., 69 Ohio St. 339, 69 N. E. 614. Here, the complaint is based upon a violation of the fiduciary relationship undoubtedly existing between plaintiff corporation and defendant, alleged to have greatly injured the business of the corporation. I can see no such relationship between a possible deception of the public as to the controlling interest in the plaintiff and plaintiff's right to invoke the aid of equity to secure relief against a breach of trust as would warrant the application of this maxim to this case.

Upon the issue raised by the defense that defendant's acts were in accord with an understanding had prior to his entry into the Red Top Cab Company, and that this understanding and subsequent acquiescence estop plaintiff from now objecting to defendant's conduct, the evidence is in conflict in many particulars. An extended review of the evidence in this regard is not necessary; it is sufficient to say that, after a careful consideration of the testimony, and assuming without deciding that understandings with and acquiescence of officers of Yellow and Checker Cab Company, Cons., can raise an estoppel against plaintiff, I find that the conflicts must be resolved in favor of plaintiff. I do not find either prior agreement or subsequent acquiescence from which an estoppel can be raised to preclude plaintiff from securing the relief to which it may be entitled.

The question as to whether plaintiff has established a right to relief in equity against defendant remains to be considered.

It is true, as contended by defendant, that the directors or officers of a corporation are not, by reason of the fiduciary relationship they bear toward the corporation, precluded from entering into an independent business in competition with the corporation. Barr v. Pittsburgh Plate Glass Co. (C. C.) 51 F. 33; New York Auto. Co. v. Franklin, 49 Misc. Rep. 8, 97 N. Y. S. 781; Carper v. Frost Oil Co., 72 Colo. 345, 211 P. 370; Greer v. Stannard, 85 Mont. 78, 277 P. 622, 64 A. L. R. 772. This general statement, however, is subject to the proviso that directors or officers entering into such competing enterprises must act in good faith and may not cripple or injure the corporation which they serve. Hussong Dyeing Mach. Co. v. Morris (N. J. Ch.) 89 A. 249; Coleman v. Hanger, 210 Ky. 309, 275 S. W. 784; Cook v. Deeks, [1916] 1 A. C. 554. And where the director or officer has breached his trust to the corporation in this regard, equity will intervene to impress a trust for the benefit of the corporation upon the profits arising from the competitive business, or upon the competitive business itself. See cases cited, supra.

The evidence in the present case leaves no room for doubt that defendant, in organizing his competing business, knowingly crippled and injured the plaintiff company, depriving it of selected personnel and using its facilities in the launching of his own project. Plaintiff is entitled to a decree, and in ordering such decree I believe that elective provisions should be made therein. See Coleman v. Hanger, supra.

Accordingly, let a decree be entered ordering that:

1. Defendant shall pay to plaintiff the sum of $4,000, paid to himself as salary for his uncompleted term as manager of plaintiff with interest from the date of payment to himself.

2. Plaintiff may, at its election (a) have an accounting as to and recover profits of defendant Hanchett and defendant Green Top Cabs, Limited, reference to be made to a special master for this purpose in the event

that this election is made; or (b) upon payment of $10,000, on account of the permits purchased by defendant Hanchett, plus the fair appraised value of the properties and the capital stock of Green Top Cabs, Limited, and the capital stock owned and held by defendant Hanchett, may have the right to purchase said properties and capital stock, a reference to be made to a special master for the purpose of making appraisal in the event that this election is made.

3. Plaintiff shall recover such damages as it may prove against defendant Hanchett, reference to be made to·a special master to make an assessment of such damages.

4. Plaintiff shall recover its costs.