Herbert M. W. Quist, Appellant, v. Carl W. Dorn and Harvey R. Jewett, Appellees.

Gen. No. 9,431.

Opinion filed August 18, 1939. Rehearing denied October 3, 1939.

WILLIAM D. KNIGHT, of Rockford, for appellant.

MORRIS J. HINCHCLIFF, of Rockford, for appellee Carl W. Dorn.

KARL C. WILLIAMS, of Rockford, for appellee Harvey R. Jewett; J. PHILLIP DUNN, of Rockford, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

Herbert M. W. Quist, plaintiff, in the suit below and now appellant, filed a suit against Carl W. Dorn, the defendant, now appellee, in the circuit court of Winnebago county. The complaint alleged that Carl W. Dorn was a real estate agent in the city of Rockford, Illinois, and that C. E. Adams was a salesman employed by the defendant; that Lawrence Quist, the brother of plaintiff, through the efforts of Carl W. Dorn and C. E. Adams, entered into a contract with Paul Dondulis, in which Quist was to convey a certain house and lot in the city of Rockford, Illinois, subject to a $2,700 mortgage, and payment of $100 to Paul Dondulis, for a certain farm owned by him, said farm to be conveyed subject to a mortgage of $2,800; that it was orally agreed between Dorn, Adams and Lawrence Quist that if the trade could not be made without doing so, that Quist would cause to be conveyed a lot owned individually by Herbert M. W. Quist, but the lot was not to be conveyed unless it was necessary to complete the deal. The plaintiff further alleges that C. E. Adams approached the plaintiff and told him that the deal was ready to be closed, but that the owner of the farm, Paul Dondulis, was in jail and would soon have to be taken to the penitentiary at Leavenworth, so that the deal would have to be closed at once and to consummate the deal, his own lot would have to be put in the deal and deeded to Dondulis; that the plaintiff executed a deed in blank without the description of the property, or a grantee inserted in the deed and the same was not acknowledged by him.

The bill further avers that after the deeds were executed, that he learned that his lot was never conveyed to Paul Dondulis, but that the defendant, unbeknown

to the plaintiff, had inserted his sister's name, Dorothy Dorn, as grantee, in the deed and later Dorothy Dorn had conveyed the lot to the defendant, Carl W. Dorn; that the same was done without his knowledge or authority; that said deed is void and is a fraud upon the plaintiff; that he has repeatedly demanded that the defendant reconvey to him the said lot, or that the defendant pay to the plaintiff the reasonable value of the property at the time of the filling in the name of the grantee, in the deed as aforesaid. The value of the property is alleged to be $2,500. In the prayer for relief, the plaintiff asks that the defendant be directed to reconvey to the plaintiff, the title to the premises within a certain day fixed by the court, and if said defendant does not so reconvey as directed, that the court enter a judgment in favor of the plaintiff and against the defendant for the value of said premises at the time the said deed was executed, namely April 26, 1933, with interest thereon at 5 per cent.

The defendant filed his answer in which he admits making the contract and the conveyance of the property from Quist to Dondulis and from Dondulis to Quist. He also admits taking the deed in blank and the filling in of the description of the lot and the name of the grantee. He claims this was done with the full knowledge and consent of the plaintiff. He admits the deed was never delivered to Dondulis, but claims it was taken in the name of his sister, in payment of the commission which was due him from Dondulis. The defendant also interposed and plead the defense of laches and says that the plaintiff, by his negligence and inaction for a period of five years (lacking one day), without taking any action or asserting his rights, should be barred from maintaining his suit.

The property has been conveyed several times and finally Mr. Harvey R. Jewett became the owner and improved the same with a dwelling house, at an approximate cost of eight to nine thousand dollars. He

was allowed to intervene in the suit and set forth his rights to the property. He claimed to be an innocent purchaser for value; that the record shows a clear title in his grantor and that the plaintiff knew that he was improving the lot and is therefore guilty of laches and the suit of the plaintiff should be dismissed.

The case was tried before the court without a jury who found the issues for the defendants and dismissed the bill for want of equity, assessed the costs of the suit against the plaintiff and entered a decree accordingly. It is from this decree that the appeal is prosecuted.

There is no dispute that Harvey R. Jewett, the intervenor in the court below, purchased the property in good faith and Quist, the plaintiff, knew that Jewett was improving the property by building a new home on the same. As between Herbert M. W. Quist and Harvey Jewett, we think the court properly found that Quist was guilty of laches and it would be inequitable for him to sit by and see Jewett make valuable improvements and say nothing about him being the owner of the lot, especially so when the record shows a clear title in Jewett's grantor. The judgment of the trial court in favor of the intervenor, Jewett, is affirmed.

The appellee, Dorn, also insists that the appellant is guilty of laches and therefore the suit should be barred, as to him. A different rule relative to laches prevails between Mr. Quist and Mr. Dorn. The evidence shows that Mr. Quist and also his attorney, Mr. Knight, approached Mr. Dorn several times in regard to a settlement in this matter. Laches has been described as such neglect or omission to assert a right as, taken into conjunction with lapse of time more or less great, and other circumstances causing prejudice to the adverse party, operates as a bar in a court of equity. In an equitable proceeding, it is only when by the delay or neglect to assert a right that the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he would have done in ref-

ereuce to the property, had the right been properly asserted, that the defense of laches can be considered. *Simons v. Morris,* 333 Ill. 183. Soon after this deed was executed, Dorn sold the property, so that he has not been prejudiced in any way by the failure of the plaintiff to prosecute his suit at an earlier date. Under the circumstances in this case, Quist was not guilty of laches.

The record in this case shows that the Quists were to exchange the house and lot for the farm in question, and if it were necessary, the lot of the plaintiff was to be included. They were also to pay Dondulis $100 and pay $100 commission to Dorn and if Dondulis couldn't pay his share of the commission, then Quist was to pay $150. In order to close the transaction before Dondulis went to the penitentiary, the appellant, Quist, signed a deed without any description of the property, or grantee named therein. The appellant argues at length that this deed is void. We think it is not necessary to decide this point for we have held that Quist is barred from maintaining a suit against Jewett for the possession of the lot, and the title for same cannot be questioned. The only action which Quist can maintain is against Dorn.

Quist did not intend to deed the lot to anyone except Dondulis. The evidence shows that the Dondulises did not know anything about the lot being a part of the transaction, until after the deal was consummated. Dorn was acting as a real estate broker for and on behalf of Quist, and a fiduciary relation existed between them. A fiduciary relationship of principal and agent is well expressed in the case of *Lerk v. McCabe,* 349 Ill. 348. "The relation of principal and agent is one of trust and confidence, and where such confidence is reposed and such relation exists it must be faithfully acted upon and preserved from any intermixture of imposition. . . . (*Perry v. Engel,* 296 Ill. 549.) An agent acting for the purchaser of land, whether by

appointment or as a volunteer, must see that he meets fairly and squarely the responsibility of his position and does not take any advantage, either for his own gain or to the injury of the person whom he represents. (*Salsbury v. Ware,* 183 Ill. 505.) The rule is well established in equity that the relation existing between principal and agent for the purchase or sale of property is a fiduciary one, and the agent in the exercise of good faith is bound to keep his principal informed on all matters that may come to his knowledge pertaining to the subject matter of the agency. (*Reiger v. Brandt,* 329 Ill. 21.) An agent must not put himself, during the continuance of his agency, in a position adverse to that of his principal. To the latter belongs the exercise of all the skill, ability and industry of the agent. If a party employs an agent to make a purchase of land he is entitled to all the skill, ability and industry of such agent to make the purchase on the best terms that can be had. (*Cottom v. Holliday,* 59 Ill. 176.) An agent cannot deal for his own advantage with the things purchased for his principal, or become a seller or buyer of them, because of his confidential relation and his duty to disclose to his principal every fact, circumstance or advantage in relation to the purchase which may come to his knowledge. (*McDonald v. Fithian,* I Gilm. 269; *Strong v. Lord,* 107 Ill. 25.) . . . It is a settled rule in this State that transactions of parties between whom a fiduciary relation exists are *prima facie* voidable on grounds of public policy. They will be closely scrutinized by a court of equity, and relief will be granted unless the party claiming the benefit of the contract shows by clear and convincing proof that he has acted in perfect good faith and has not betrayed the confidence reposed in him. (*Thomas v. Whitney,* 186 Ill. 225; *Casey v. Casey,* 14 id. 112.) It is the confidential fiduciary relation existing between the parties which gives rise to

such suspicion. If a reasonable suspicion exists that the confidence has been abused the contract will be set aside. (*Dowie v. Driscoll,* 203 Ill. 480; *Beach v. Wilton,* 244 id. 413.) And this though the contract is such that had no fiduciary relation existed the contract would not be disturbed.''

Where a fiduciary relationship exists between a grantor and grantee in a deed, the burden is on the grantee to prove that the transaction was entirely fair in every particular. Courts of equity will scrutinize with jealous vigilance, the transactions between parties occupying fiduciary relations toward each other, and the burden of proof is on the beneficiary in such case, to establish not only that the transaction was fair, but that it did not proceed from undue influence, for the abuse of confidence, or influence arising out of a fiduciary relationship will not be permitted to prevail, even though the transaction could not be impeached, if no confidential relation existed. (*McCord v. Roberts,* 334 Ill. 233; *Mors v. Peterson,* 261 Ill. 532.)

We think the evidence in this case fully sustains the contention of the appellant that the contract never contemplated the deed to the lot in question, being used for any purpose, but to convey the lot to Dondulis, according to the verbal contract between his brother and Adams, the employee, of the appellee, Dorn, and that the court erred in not finding the value of the lot at the time of the conveyance, and rendering judgment in favor of the plaintiff for that amount.

The judgment of the trial court is hereby reversed and the cause remanded to the circuit court of Winnebago county, with directions to proceed in accordance with this opinion.

*Reversed and remanded with directions.*