251 P.2d 546

**MELGARD et al. v. MOSCOW IDAHO SEED CO., Inc.**

No. 7922.

Supreme Court of Idaho.

Dec. 3, 1952.

Rehearing Denied Jan. 5, 1953.

Clements & Clements, Cox, Ware & Stellmon, Lewiston, Roy A. Redfield, Spokane, Wash., for respondent.

J. H. Felton, William J. Jones, Lewiston, for appellants.

268

TAYLOR, Justice.

The plaintiffs (appellants) brought this action to recover upon four promissory notes given by the defendant (respondent) for unpaid wages due W. R. Melgard for services to the defendant as its general manager. The defendant admits its liability upon the notes. By counterclaim it sought and obtained judgment against the plaintiffs for a loss, in excess of the amount due on the notes, occasioned to it by a breach of duty on the part of Melgard while acting as a director and general manager of the defendant.

The defendant was established and its business carried on for many years by one Joe Zeb, who in his lifetime owned most of the stock and conducted the business as his personal affair. The business consisted of the buying, milling, processing, and selling of grains, beans, peas, lentils, etc. For a number of years prior to the death of Mr. Zeb in 1942, the plaintiff, W. R. Melgard, was employed by him and acted as assistant manager. Joe Zeb left a will by which the ownership and control of the corporation passed to his widow and she was made the trustee of an expressed trust in favor of his employees, by the terms of which the employees were to share in certain excess profits anticipated in the continued operation of the business. Following the death of Mr. Zeb, Mr. Melgard was employed as general manager at a salary of $3,000 per annum, plus 15% of annual net profits computed before income tax and bonuses. Thereafter Mr. Melgard served as a director of the corporation and had practically complete management of the business until 1947.

One Harry Graser, a son of Joe Zeb's widow, became an employee and director in 1946. August 14, 1947, a resolution was adopted by the board of directors requiring certain purchase orders to be countersigned by either Graser or the secretary-treasurer, D. C. Wilson. August 18th, at an adjourned session of the same directors' meeting, Mr. Melgard announced that it was to be expected that Mr. Graser would assume the management at some time in the future, and that he thought Graser would be qualified, and that he would be ready to step out and let Mr. Graser take over on July 1, 1948. Mr. Melgard continued in the management with Graser as assistant manager until July 1, 1948, when his connection with the business ended.

During the years of his active management, it was a part of the duty and function of Mr. Melgard to arrange for the

financing of the company's business at the First Trust and Savings Bank in Moscow where its banking was carried on. In this connection he frequently signed short term and demand notes for the company as its manager. This he did up to and including June, 1948.

In October, 1947, anticipating the buying of peas by the Department of the Army, Melgard began negotiations for the purchase of peas. On October 24th, by telephone from his, the manager's office of the defendant, he inquired of the American Fruit Growers, Inc., of Oaksdale, Washington. He told the sales manager of that company that he wanted two million pounds of dry peas for which he was offering $5.85 per hundredweight, and gave the number of the long distance telephone in his, the manager's, office of the defendant, for the reply. Later the same day the sales manager at Oaksdale, by phone, advised Melgard that his firm would supply the peas at the price named. On the same day a confirmation of sale was drawn up by the Oaksdale company in the name of Moscow Idaho Seed Company as purchaser, the original of which was mailed to the company and received by Melgard as its manager. Sometime in October, Mr. Melgard and one McCowan organized a partnership or joint venture under the name of North Idaho Brokerage Co., and began buying peas in anticipation of the Army purchases. On or about October 31st, Melgard requested the American Fruit Growers, Inc., to change the confirmation of sale from the Moscow Idaho Seed Company to the North Idaho Brokerage Co. This was done and in January and February, 1948, the peas were shipped according to Mr. Melgard's directions. The secretary of the Oaksdale firm then requested an assignment of the original confirmation of sale, from defendant to North Idaho Brokerage Co. In response to this request Mr. Melgard mailed to that firm the original confirmation of sale without any endorsement or assignment. In the meantime the Army's invitation for bids having been extended to the industry, on December 8th Mr. Melgard submitted bids (offers to sell) for 5,480,000 pounds of peas at $.0799 per pound in the name of the North Idaho Brokerage Co., and for 4,000,000 pounds at $.0803 per pound in the name of the Moscow Idaho Seed Company, Inc. Both bids were accepted and the peas were shipped, received, and paid for by the Army.

By its counterclaim the defendant sought to offset and have judgment for the profits realized by Melgard on the total sales to the Army made by the North Idaho Brokerage Co. The court, however, allowed recovery for only the 2,000,000 pounds purchased from the American Fruit Growers, Inc., and originally contracted in the name of the defendant. The profit on this transaction was found to be $32,150. From this the court deducted 15%, which theoretically the plaintiff would have received as his share of the profit had the deal been com-

pleted in the name of the defendant. This left a net profit of $27,327. From this was deducted the amount due on the notes as of June 30, 1948, to-wit: $22,669.76, leaving an excess in favor of the defendant of $4,657.74, plus interest at the statutory rate from July 1, 1948, for which judgment was entered for the defendant on its counterclaim. This appeal is from that judgment.

In 1948, the widow of Joe Zeb, as trustee under his will, filed a petition in the district court of Latah County against former and current employees of the Moscow Idaho Seed Company, Inc. This petition sought a declaratory judgment defining her rights and duties as trustee and particularly to have the court determine who were the beneficiaries of the trust as employees under the will of Joe Zeb, and how the profits to be distributed to such beneficiaries were to be determined, and the date of the inception of the trust. Mr. Melgard was named as one of the defendants. He answered by disclaiming any interest as a beneficiary of the trust. Other employees answered, contending that the four notes given by the defendant to Melgard (upon which this action was brought) represent payment of the 15% of profits accruing under the agreement by which he was employed as general manager, and that the payment of such compensation was in violation of the trust and should not be allowed as a credit to the trustee in the computation of the profits to be distributed

under the will. The court in that case held that the notes represented a part of the expenses incurred in the operation of the business, allowed them as a credit to the trustee and, the notes having been admitted in evidence, directed they be returned to Melgard. The appellants contend that the judgment in that action is a bar to the counterclaim interposed here on the ground of res judicata. The trial court properly held against this contention. The former action was not between the same parties and the issue raised by the counterclaim here was not before the court in that case. § 10-1211, I.C.; Hilton v. Stewart, 15 Idaho 150, 96 P. 579; Rogers v. Rogers, 42 Idaho 158, 243 P. 655; Kralick v. Shuttleworth, 49 Idaho 424, 289 P. 74; Mochel v. Cleveland, 51 Idaho 468, 5 P.2d 549; Collard v. Universal Automobile Ins. Co., 55 Idaho 560, 45 P.2d 288; Evans v. Davidson, 57 Idaho 548, 67 P.2d 83.

We have examined the transcript and conclude that the evidence preponderantly supports the findings of the trial court and the judgment as entered.

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions." § 30-142, I.C.

As such fiduciary, director, and general manager of the defendant, it was Melgard's duty to devote his time, skill, knowledge, and judgment to the welfare of the company, and to avoid any engagements, activities, or dealings which would render his personal interests antagonistic to those of his company.

"* * * if there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation, the law will not permit him to seize the opportunity for himself. And, if, in such circumstances, the interests of the corporation are betrayed, the corporation may elect to claim all of the benefits of the transaction for itself, and the law will impress a trust in favor of the corporation upon the property, interests and profits so acquired." Guth v. Loft, Inc., 5 A.2d 503, at page 511.

"In short, there is demanded of the officer or director of a corporation that he furnish to it his undivided loyalty; if there is presented to him a business opportunity which is within the scope of its own activities and of present or potential advantage to it, the law will not permit him to seize the opportunity for himself; if he does so, the corporation may elect to claim all of the benefits of the transaction." Lutherland, Inc., v. Dahlen, 357 Pa. 143, 53 A.2d 143, at 147.

In Jensen v. Sidney Stevens Implement Company, 36 Idaho 348, 210 P. 1003, 1005, this court approved an instruction, stating:

"'And, if an agent makes any profit in the course of his agency because of his failure to inform his principal of facts known to him, or which in the exercise of due diligence he should have ascertained for his principal, the profits of such transaction, as a matter of law, will belong exclusively to the agent's principal. The law guards the fiduciary relation, which the relation of principal and agent is, with jealous care. It seeks to prevent the possibility of a conflict between duty and personal interest. It demands that the agent shall work with an eye single to the interest of his principal. It forbids him from acting adversely to his principal, either for himself or for others.'"

See also, Golden Rod Mining Co. v. Bukvich, 108 Mont. 569, 92 P.2d 316; Michigan Crown Fender Co. v. Welch, 211 Mich. 148, 178 N.W. 684, 13 A.L.R. 896; Bump Pump Co. v. Waukesha Foundry Co., 238

Wis. 643, 300 N.W. 500; Ontjes v. Mac-Nider, 232 Iowa 562, 5 N.W.2d 860; Diedrick v. Helm, 217 Minn. 483, 14 N.W.2d 913, 153 A.L.R. 649; Urban J. Alexander Co. v. Trinkle, 311 Ky. 635, 224 S.W.2d 923; Lincoln Stores v. Grant, 308 Mass. 417, 34 N.E.2d 704; Horne v. Holley, 167 Va. 234, 188 S.E. 169; Solimine v. Hollander, 128 N.J.Eq. 228, 16 A.2d 203; East & West Coast Service Corp. v. Papahagis, 344 Pa. 183, 25 A.2d 339; Red Top Cab Co. v. Hanchett, D.C.Cal., 48 F.2d 236; Connelly v. Special Rd. and Bridge Dist., 99 Fla. 456, 126 So. 794, 71 A.L.R. 923; Note 13 A.L.R. 905 at 909; Note 64 A.L.R. 782; Note 71 A.L.R. 933.

■ The court found that a part of the duties of plaintiff as general manager "was to finance its operation." Appellants complain of this assignment, construing it to mean that Melgard as general manager was required to use his own money or credit to finance the business of the company. This, of course, is not required of a manager or director, but we do not construe the finding to so infer. As stated, the evidence shows that as manager he did, by signing notes in the name of the company, obtain credit with which to finance its operations. We construe this finding in the light of that evidence. In this connection the court further found:

"that the original confirmation of sale to the defendant corporation (Exhibit 7) shows that the defendant had credit with the seller for the two million pounds of peas thereby sold; and that the acceptance of a bid by the Department of the Army for said peas at an increase over the cost price would facilitate the financing of delivery."

■ This finding is supported by the record and justifies the conclusion that the corporation was able to avail itself of the opportunity afforded by the deal initiated in its name with the American Fruit Growers, Inc., and that it became appellant's duty to carry on that transaction for it and in its behalf. Appellants offered no evidence to show that the defendant was either unable or unwilling to avail itself of the opportunity, except the testimony of Melgard that Graser was not in favor of speculating in peas. This was denied by Graser. Under the circumstances the burden was upon appellants to show the inability or unwillingness of the company to undertake the transaction, or other facts which would justify the otherwise apparent breach of the fiduciary relationship. Harrington v. High, 39 Idaho 555, 228 P. 883; T. W. & L. O. Naylor Co. v. Bowman, 39 Idaho 764, 230 P. 347; Burns v. Skogstad, 69 Idaho 227, 206 P.2d 765; Quist v. Dorn, 301 Ill.App. 264, 22 N.E.2d 729; Singer v. Carlisle, Sup., 26 N.Y.S.2d 172.

■■ At the close of the trial the appellants orally invoked the provisions of § 5–218, I.C. of the statutes of limitation. We do not determine whether such defense

can be raised in this manner. The trial court having passed upon it, and respondent not having objected, we will consider it. The action set up by the counterclaim being one to impress a trust upon profits which in good conscience should have accrued to the defendant, it appears that § 5–218, I.C. is not applicable. Rather the provisions of §§ 5–217 or 5–224 are controlling. Both are four-year statutes. The original counterclaim herein was filed October 23, 1950, and as amended May 3, 1951. Since the cause is not barred by either, we do not undertake to say which should be specifically applied. Cf. Cruzen v. Boise City, 58 Idaho 406, 74 P.2d 1037; Shepherd v. Dougan, 58 Idaho 543, 76 P.2d 442. Nor do we think this is a liability "created by law" within the meaning of § 5–237, I.C. Feehan v. Kendrick, 32 Idaho 220, 179 P. 507; Jensen v. Aikman, 32 Idaho 261, 181 P. 525. Further, in this connection we do not consider the question as to whether the statutes of limitation should be applied in such a case, or whether, the counterclaim being an appeal to equity, the equitable doctrine of laches should control. Burns v. Skogstad, 69 Idaho 227, 206 P.2d 765; Pratt v. Shell Petroleum Corp., 10 Cir., 100 F.2d 833. In any event, we agree with the finding of the trial court that the cause is not barred by either limitation or laches.

In the minutes of the stockholders' meeting of the defendant company, dated July 19, 1948, appears the following: "The actions of the officers and directors during the past year are ratified and approved." Appellants rely upon this as a ratification by the defendant of Mr. Melgard's acts in connection with the transaction upon which the judgment was entered. Such ratification, as a matter of course, is limited to proper official acts of the directors and officers and cannot be regarded as approval of extra-official acts, and especially such acts as are unknown to the stockholders at the time. Blackwell v. Kercheval, 29 Idaho 473, 160 P. 741; Chamberlain v. Amalgamated Sugar Co., 42 Idaho 604, 247 P. 12; Hyams v. Old Dominion Co., 113 Me. 294, 93 A. 747, L.R.A.1915D, 1128; Lutherland v. Dahlen, 357 Pa. 143, 53 A.2d 143; 2 C.J.S., Agency, §§ 41 and 42; 13 Am.Jur., Corporations, § 978. Where the agent's personal interests. are in conflict with those of his principal, and where his personal interests might be jeopardized by a full disclosure to the principal, the presumption is that the principal does not have knowledge of such acts. 2 Am.Jur., Agency, § 379.

In such case the burden was upon the agent to show that the stockholders had full knowledge of the facts. No such showing was attempted. Southwestern Inv. Co. v. Green, Tex.Civ.App., 19 S.W.2d 102; 3. C.J.S., Agency, § 319(2); 2 Morawetz, Corporations, 2d ed., § 629.

In their special demurrer to the counterclaim appellants plead the statute of frauds. § 9–505, I.C. This statute is not:

274

applicable. The respondent pleads an implied trust under § 9–504, I.C., which may be established by parol evidence. Pittock v. Pittock, 15 Idaho 426, 98 P. 719; Reid v. Keator, 55 Idaho 172, 39 P.2d 926; Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686.

The judgment is affirmed with costs to respondent.

GIVENS, C. J., and PORTER, THOMAS and KEETON, JJ., concur.