64 P.3d 953

**Jill JENKINS, Plaintiff–Appellant,**

v.

**Scott JENKINS, Linda Hines and Doug Jayo, Defendants–Respondents.**

No. 27241.
Boise, 2002 Term of Court.

Supreme Court of Idaho.

Jan. 30, 2003.

Rehearing Denied March 10, 2003.

Lawrence G. Sirhall, Jr., Boise, for appellant.

Holland & Hart, Boise, for respondents. Ted Christopher Murdock argued.

SCHROEDER, Justice.

Jill Jenkins sued Scott Jenkins, Linda Hines (Hines), and Doug Jayo (Jayo), the officers and directors of Summer Wind Residence, Inc. (Summer Wind). Jill Jenkins had been a minority shareholder, and she alleged that the officers and directors breached their fiduciary duty by usurping a corporate opportunity that belonged to Summer Wind. The district court entered judgment for the officers and directors after a court trial.

## I.

### FACTUAL BACKGROUND

Hines, Jayo, and Scott Jenkins incorporated Summer Wind on July 22, 1993. Hines was the president, Jayo was the vice president, and Scott Jenkins was the secretary/treasurer. Summer Wind was incorporated to operate an assisted care facility called Castle Drive in Boise, Idaho. Castle Drive was Summer Wind's only asset. The officers and directors never intended to develop another facility or project under the

Summer Wind corporation. On July 23, 1993, Hines, Jayo, and Scott Jenkins were issued 35, 35, and 30 shares, respectively, of corporate stock. At the time, Scott Jenkins was married to Jill Jenkins. In July 1994, Jill filed for divorce. The divorce proceedings were extensive and acrimonious. In October 1994, payment on Summer Wind's construction loan was due, and Summer Wind attempted to close on the Castle Drive construction loan and convert to permanent financing. To do so, Key Bank and the Small Business Administration required Summer Wind's officers, directors and shareholders to provide personal guarantees. Jill Jenkins' guarantee was also required, but she repeatedly refused to give her guarantee and refused to meet with Hines or the other officers. On December 15, 1994, the shares issued to Scott Jenkins were divided evenly between Scott & Jill Jenkins, each getting 15 shares.

In December 1994, Richard Sontgerath, a representative of Assisted Living America (ALA), arrived unannounced at the Castle Drive facility and met with Linda Hines. He offered her the opportunity to participate in a joint venture whereby she would research and identify possible locations for an assisted care facility which ALA would build and operate. Sontgerath also offered to buy from Summer Wind the Castle Drive facility for $3.0 million. Hines located a site in Chubbuck, Idaho, the "Chubbuck Project." She and Jayo signed an earnest money agreement for the property in 1995. Summer Wind was mistakenly listed as the buyer. Hines and Jayo asked the realtor to correct the mistake, but it was never corrected. Jayo signed a $10,000 promissory note for the earnest money agreement. ALA provided another $5,000 for the earnest money agreement. During May–August 1995, Summer Wind also loaned funds to a to-be-formed entity, which would use the funds for expenses related to the Chubbuck Project. Zoning requests had also been made on the Chubbuck project during the first half of 1995.

In May 1995, Key Bank agreed to provide permanent financing for Castle Drive if Jill Jenkins' 15 shares of stock were redeemed. Summer Wind did not have the money to buy the shares back, so Key Bank provided the funds to buy the shares as part of the financing. On June 15, 1995, Summer Wind purchased Jill Jenkins' stock for $225,000, which represented 15% of the $3 million estimated sale price to ALA. The officers and directors gave Jill access to all of Summer Wind's financial documents, but they never told her of the potential development of the Chubbuck Project.

In May 1995, the joint venture with ALA failed. Hines decided to complete the Chubbuck Project on her own, with the assistance of Scott Jenkins and Jayo. In July 1995, Hines, Scott Jenkins and Jayo formed Mountain States LLC for the purpose of developing and operating the Chubbuck Project. Mountain States obtained a construction loan from Key Bank for the Chubbuck Project on the condition that the officers and directors sell Castle Drive and pledge their personal credit and provide 10% of the "hard" construction costs from their personal funds. They sold Castle Drive and applied their individual profits to the Chubbuck Project financing agreement. The Chubbuck Project was developed and became an operational assisted care facility.

## II.

### PROCEDURAL BACKGROUND

Jill Jenkins filed suit against the officers and directors of Castle Drive. In a pretrial ruling, the trial court clarified the issues, determining that "Plaintiff's burden at trial will be to prove that the defendants owed a fiduciary duty to the plaintiff, that the defendants breached a fiduciary duty owed to the plaintiff by usurping a corporate opportunity allegedly belonging to Summer Wind, and that damage resulted from the breach of fiduciary duty." Following trial, the court issued findings of fact and conclusions of law and entered judgment for the officers and directors. This appeal followed.

## III.

### THE DISTRICT COURT DID NOT ERR IN FAILING TO SPECIFICALLY ADDRESS THE DUTY TO DISCLOSE

#### A. Standard of Review

In all actions tried to a court without a jury, the trial court is required to make

specific findings of fact and conclusions of law which support its decision. I.R.C.P. 52(a); *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). The purpose of I.R.C.P. 52(a) is to provide the appellate court with a clear understanding of the trial court's decision so that it may determine whether the trial court applied the proper law in reaching its ultimate judgment. *Pope,* 103 Idaho at 225, 646 P.2d at 996. The failure of the trial court to make specific findings and conclusions will be disregarded only where the record is clear and yields obvious answers to the relevant questions. *Smith v. Idaho State Univ. Fed. Credit Union,* 114 Idaho 680, 684 n. 4, 760 P.2d 19, 23 n. 4 (1988).

### B. The district court's failure to discuss the duty to disclose is not reversible error.

 A corporate officer owes a duty to disclose to shareholders information affecting the value of stock he or she seeks to purchase from those shareholders. *Weatherby v. Weatherby Lumber Co.,* 94 Idaho 504, 506, 492 P.2d 43, 45 (1972) ("The duty to disclose was breached when William Weatherby purchased the shares of stock from his brother and sister without disclosing the negotiations for sale, the culmination of which would result in enhancing the value of the stock."); *Fox v. Cosgriff,* 66 Idaho 371, 381–83, 159 P.2d 224, 228–29 (1945). Jill Jenkins relies upon the authority of at least two jurisdictions that have held that corporate officers have a duty to disclose to shareholders facts material to a corporate opportunity presented to them, and that the shareholders must consent prior to an officer's seizure of the opportunity. *Lussier v. Mau–Van Development, Inc.,* 4 Haw.App. 359, 667 P.2d 804, 813 (1983); *Hill v. Hill,* 279 Pa.Super. 154, 420 A.2d 1078, 1082 (1980).

Jill Jenkins asserts that the officers and directors breached their duty to disclose information concerning the Chubbuck Project. The district court made no findings of fact making reference to whether the officers and directors did or did not disclose activities relevant to the Chubbuck Project to Jill Jenkins. The Conclusions of Law establish the general duties of loyalty under the fiduciary duty, but make no specific reference to a duty to disclose. The district court concluded that (1) "the Chubbuck project was never a corporate opportunity of Summer Wind Residence, Inc." and (2) "once the corporation had purchased Jill Jenkins's stock from her [on June 15, 1995], neither the corporation nor its officers or directors were under any obligations to Jill Jenkins whatsoever." Implicit in these findings is the idea that there was no duty to disclose relative to the business venture, if that venture was not a corporate opportunity.

There is evidence that the Chubbuck Project was only Hines' opportunity and never a Summer Wind opportunity. There is evidence that Hines was not willing to pursue or develop the Chubbuck Project if Jill Jenkins was involved. Even if a Summer Wind opportunity, there is evidence that the Chubbuck Project was not developed enough at the time Summer Wind bought Jill's stock to invoke the duty to disclose. The "opportunity" had not been seized as no financing had yet been found. The deal could have collapsed at any time, despite the preliminary investigation of the site, earnest money agreements, and zoning requests. The officers and directors had disclosed to Jill the pending sale of Castle Drive and included Jill's share of the estimated future profit of the Castle Drive sale in the price of her stock buyout. Even though the district court did not specifically address the duty to disclose as part of the fiduciary duty, a review of the record shows that such duty did not come into play and, thus, the trial court findings need not be disturbed on this point. *Smith,* 114 Idaho at 684 n. 4, 760 P.2d at 23 n. 4.

### IV.

### THE DISTRICT COURT DID NOT ERR IN CONCLUDING THAT THE RESPONDENTS HAD NOT USURPED A CORPORATE OPPORTUNITY IN DEVELOPING THE CHUBBUCK PROJECT

#### A. Standard of Review

 This Court will not set aside findings of fact unless they are clearly erroneous.

I.R.C.P. 52(a); *Halen v. State*, 136 Idaho 829, 832, 41 P.3d 257, 260 (2002). If the district court's findings of fact are based upon substantial and competent, although conflicting evidence, they should not be disturbed on appeal. *Id.* at 832, 41 P.3d at 260. "Evidence is substantial if a reasonable trier of fact would accept and rely upon it in determining whether a disputed point of fact has been proven." *Weaver v. Millard*, 120 Idaho 692, 698, 819 P.2d 110, 116 (Ct.App.1991). Additionally, this Court gives due regard to the district judge's special opportunity to judge the credibility of witnesses who personally appeared before the judge. I.R.C.P. 52(a); *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). This Court will liberally construe the trial court's findings of fact in favor of the judgment entered. *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990).

This Court, however, exercises free review over the trial court's conclusions of law to determine if the trial court correctly stated the principles of law and if the legal conclusions are supported by the facts as found. *Nampa & Meridian Irrigation Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 521, 20 P.3d 702, 705 (2001). The Court is "free to draw its own conclusions from the facts presented." *Kootenai Elec. Coop. v. Washington Water Power Co.*, 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995).

### B. There is substantial and competent evidence to support the finding that there was no corporate opportunity.

Corporate directors, as fiduciaries, are bound to exercise the utmost good faith in managing the corporation. *Steelman v. Mallory*, 110 Idaho 510, 513, 716 P.2d 1282, 1285 (1986). More specifically, "[t]hat the directors of a closely held corporation owe a fiduciary duty to the minority shareholders is well recognized." *Id.* at 513, 716 P.2d at 1285. A corporate officer must not take a business opportunity "which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation." *Melgard v. Moscow Idaho Seed Co.*, 73 Idaho 265, 271, 251 P.2d 546, 550 (1952) (quoting *Guth v. Loft, Inc.*, 23 Del.Ch. 255, 5 A.2d 503, 511 (1939)). If an officer personally claims an opportunity belonging to the corporation, the corporation may acquire all of the profits derived from the transaction by the officer. *Id.*

As to the factor of financial inability, it appears that there is a split among courts. Some courts consider financial inability no defense to the corporate opportunity doctrine. *W.H. Elliott & Sons Co. v. Gotthardt*, 305 F.2d 544 (1st Cir.1962) (applying Massachusetts law); *Foley v. D'Agostino*, 21 A.D.2d 60, 248 N.Y.S.2d 121 (1964) (applying New York law). Other courts hold that financial inability is a defense if, in addition to financial inability, the director discloses the opportunity to the shareholders, obtains their consent, and such action is not detrimental to the corporate creditors. *Lussier v. Mau–Van Development, Inc.*, 4 Haw.App. 359, 667 P.2d 804, 813 (1983); *Hill v. Hill*, 279 Pa.Super. 154, 420 A.2d 1078, 1082 (1980). It is clear, however, that corporate directors and officers are not required to use their own money or credit to finance the business of the company. *Melgard*, 73 Idaho at 272, 251 P.2d at 550.

Among the factors courts have found relevant to a corporation's financial inability to seize an opportunity are (1) the availability of assets, (2) attempts to obtain financing, (3) the effect of the opportunity on other corporate operations, and (4) the existence of a corporate policy against such purchases. Annotation, *Financial Inability of Corporation to Take Advantage of Business Opportunity as Affecting Determination Whether "Corporate Opportunity" Was Presented*, 16 A.L.R.4th 185, 195–201 (1982). This Court has held that financial inability was not a defense to the corporate opportunity doctrine where the corporation did not have the necessary cash on hand, but where other assets or credit were available to the corporation. *Melgard*, 73 Idaho at 272, 251 P.2d at 550–51

(the corporation had an established history of credit with the seller); *Knutsen v. Frushour,* 92 Idaho 37, 42, 436 P.2d 521, 526 (1968) (corporation owned land which could have been used to barter for the land it desired).

In this case, there is substantial evidence to support the trial court's finding that there was no corporate opportunity. The first factor to corporate opportunity—financial inability—is present here.[1] There is evidence that Summer Wind could not obtain financing for the Chubbuck project without pledging their personal credit,[2] which the law does not require them to do. *Melgard,* 73 Idaho at 272, 251 P.2d at 550. The second factor asks whether the opportunity is in the "line of the corporation's business and is of practical advantage to it." The line of Summer Wind's business was undisputedly assisted living facilities. From the face of things, developing another facility would seemingly be of practical advantage to it as it involved Summer Wind's exact line of business and expertise. However, there is testimony from Summer Wind's accountant to the effect that he recommended not having more than one facility under the single incorporation of Summer Wind because of liability concerns. In addition, the trial court found that "it was not to the corporation's advantage to pursue any other business opportunities as long as Jill Jenkins was a shareholder." The trial court supported this statement with the finding that "Jill Jenkins's participation as a shareholder in the corporation was an obstacle to the corporation's ability to operate." There is substantial evidence to support this finding. Common sense suggests that expanding a closely held corporation made up of four shareholders including contentious ex-spouses and estranged sisters, is not practical. The acrimony among the few shareholders of Summer Wind not only speaks to whether a new opportunity would have been of practical advantage, but also calls into question the viability of the corporation as a whole.

Summer Wind did not have an expectancy and interest in such a venture. None of the directors intended to develop more facilities than the Castle Drive facility under the Summer Wind corporation. They established, by consensus, the equivalent of a corporate policy that no other facilities would be formed under the corporate name of Summer Wind because of the potential liability and the risk it would be for Castle Drive. Also, none of the directors desired to embark on any new business development that would involve Jill because of the residual animosity after her divorce with Scott. While there is some conflicting evidence that Summer Wind may have entertained ideas for further development,[3] there is substantial evidence to support the trial judge's finding of no expectancy or interest.

Finally, the *Melgard* test asks whether the opportunity presents conflicting self-interest. This factor favors Jill in view of the fact that a sale of Castle Drive, the primary asset of Summer Wind, was necessary as part of the agreement to finance the Chubbuck Project under the new corporation name. However, the sale of Castle Drive was known to Jill and agreed upon by all of Summer Wind's officers. In fact, the price Summer Wind

---

1. The trial court found that "Summer Wind Residence, Inc. did not have the financial ability to take advantage of the opportunity to develop the Chubbuck Project." It also found that "[i]n order for Summer Wind Residence, Inc. to obtain a construction loan for the Chubbuck project, Key Bank or another bank would have required Linda Hines, Scott Jenkins, Jill Jenkins and Doug Jayo, each to pledge their personal guarantee for the entire loan amount."

2. The loan has two terms relevant to this point:

 8. *Additional Cash Collateral.* Lender requires a depository account be established at Key Bank of Idaho in an amount equal to 10% of the Hard Construction Costs, and Site Improvements. These funds are specifically identified to cover cost overruns which may occur during the course of construction.
 . . . .
 10. *Guarantors.* The loan shall be personally guaranteed by Linda S. Hines, Douglas Jayo, Scott A. Jenkins [('Guarantors'). These guarantors shall execute a continuing guaranty in form and content satisfactory to Lender and for the full amount of the indebtedness of $3,175,000.00.

3. A letter from Scott Jenkins to Jill Jenkins, dated March 22, 1995, in response to Jill's request for explanation of corporate expenditures, states, "Travel expenses paid by Summer Wind Residence, Inc. are totally appropriate and within the rights of the corporation to explore any possibility of future enterprises."

paid to Jill for her stock specifically reflected the future sale price of the Castle Drive facility. By the time respondents financed the Chubbuck Project, Jill no longer had any interest in Summer Wind, and, indeed Summer Wind, in essence, no longer existed.

There is substantial and competent evidence supporting the trial court's finding that the Chubbuck project was never a corporate opportunity of Summer Wind.

## V.

## THE RESPONDENTS ARE NOT ENTITLED TO ATTORNEY FEES

 Idaho Code § 12–121 provides that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties . . . ." This Court has described the application of this statute as follows:

> In awarding reasonable attorney fees to the prevailing party on appeal, this court will be guided by the following general principles. Since the statutory power is discretionary, attorney fees will not be awarded as a matter of right. Nor will attorney fees be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented. In normal circumstances, attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. See I.R.C.P. 54(e)(1).

*Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). "When deciding whether the case was brought or defended frivolously, unreasonably, or without foundation, the entire course of the litigation must be taken into account. Thus, if there is a legitimate, triable issue of fact, attorney fees may not be awarded under I.C. § 12–121 even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or without foundation." *Nampa & Meridian Irrigation Dist. v. Washington Fed. Sav.*, 135 Idaho 518, 524–25, 20 P.3d 702, 708–09 (2001).

The appeal was not made "frivolously, unreasonably or without foundation." There is law to support the duty to disclose, even though the failure to address it in this case was not error. Also, there is conflicting evidence on several points relevant to the corporate opportunity issue. There were legitimate, triable issues of fact, and a legitimate question as to the relationship of those facts to the law. An appeal on the application of the law to the facts in this case was not unreasonable or frivolous. Attorney fees are not awarded to respondents.

## VI.

## CONCLUSION

The decision of the district court is affirmed. Costs on appeal are awarded to respondents. No attorney fees are allowed.

Chief Justice TROUT, Justices KIDWELL, EISMANN and Justice Pro Tem SMITH concur.